# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 3:10-bk-01596 |
| RQB Resort, LP and RQB Development, LP,[1] | ) | Chapter 11 |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

## DEBTORS' MOTION FOR AUTHORITY TO USE CASH COLLATERAL AND REQUEST FOR EMERGENCY PRELIMINARY HEARING

RQB Resort, LP and RQB Development, LP (collectively, the "Debtors"), move the Court pursuant to 11 U.S.C. §§ 363(c)(2) and 363(e) and Rule 4001(b)(1) of the Federal Rules of Bankruptcy Procedure, for authority to use cash collateral (the "Motion"), and request an emergency preliminary hearing on the Motion. In support of the Motion, the Debtors state:

1. On March 1, 2010 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§101 et seq., as amended (the "Bankruptcy Code"). Information regarding the Debtors, including their business operations, capital and debt structure and the events leading to the filing of these cases is contained in the Case Summary filed with the Court on the Petition Date (D.E 2).

---

[1] RQB Resort, LP's tax identification number is 86-1161952. RQB Development, LP's tax identification number is 13-4322680. The principal address of each debtor is 1000 PGA Tour Boulevard, Ponte Vedra Beach, FL 32082.

2. The Debtors operate their businesses and manage their properties as debtors in possession pursuant to Section 1107 and 1108 of the Bankruptcy Code. On the Petition Date, the Debtors filed a motion requesting that these Chapter 11 cases be jointly administered (D.E. 3). No trustee, examiner or committee has been appointed in these cases.

3. When the Debtors purchased the Resort on June 30, 2006, the Debtors entered into a mortgage loan agreement (the "Loan Agreement") with Goldman Sachs Commercial Mortgage Company ("Goldman Sachs"), for up to $193 million in principal. As of the Petition Date, the outstanding principal amount owing under the Loan Agreement plus accrued but unpaid interest was approximately $193 million (the "Loan"). Also, on June 30, 2006, the Debtors entered into an Assignment of Leases and Rents (the "Assignment Agreement") and an Amended and Restated Mortgage, Assignment of Rents, Security Agreement, and Fixture Filing (the "Amended Agreement"), together with the Loan Agreement and the Assignment Agreement, the "Loan Documents") with Goldman Sachs. The Loan is secured by substantially all of the Debtors' assets (collectively, the "Collateral").

4. To the extent that Goldman Sachs' liens and security interests in the Collateral are valid, enforceable, perfected, and nonavoidable, all cash and cash proceeds of such Collateral, including cash proceeds received by the Debtors postpetition as a result of prepetition receivables constitute Goldman Sachs' "Cash Collateral" within the meaning of Section 363(a) of the Bankruptcy Code. Additionally, all postpetition "fees, charges, accounts or other payments for the use

or occupancy of rooms and other public facilities" in the Debtors' Resort constitute Goldman Sachs' "Cash Collateral" within the meaning of Sections 363(a) and 552 of the Bankruptcy Code.[2,3]

5. By this Motion, the Debtors request that the Court grant them authority to use Cash Collateral in the ordinary course of their businesses pursuant to Section 363 of the Bankruptcy Code for the later of a 30 day period following the Petition Date or until the Court holds a final hearing on the Motion.

6. Section 363(c)(2) of the Bankruptcy Code prohibits a debtor from using cash collateral unless the secured lender consents or, after notice and hearing, the Court authorizes its use.

7. The Debtors need to use Cash Collateral to fund their day-to-day business operations. If the Debtors are unable to use Cash Collateral, the Debtors will be unable to meet their obligations to Interstate Management Company, LLC ("Interstate"), the Resort's operator, which directly employs the individuals that work at the Resort, or to pay the Resort's other ordinary course business expenditures. Payment of these obligations is critical to the Debtors' ability to preserve and

---

[2] Revenue received by the Debtors postpetition *other* than room revenue is not Goldman Sachs' "Cash Collateral" pursuant to Section 552 of the Bankruptcy Code.

[3] Goldman Sachs does not have a perfected lien on cash in RQB Resort's bank accounts in Bank of America identified on the attached Exhibit A (collectively, the "BOA Accounts") because the BOA Accounts are accounts in the name of the Debtor and are not under the control of Goldman Sachs. Under Florida law perfection of a security interest in a deposit account requires (i) that the secured party be the depository institution, (ii) that the depository bank has agreed to follow the secured party's directions without the debtor's consent, or (iii) the depository account is in the name of the secured party. (Fla. Stat. § 679.1041). None of these circumstances exist in this case. Accordingly, the cash held in the BOA Accounts is not cash collateral of Goldman Sachs.

maintain the viability of their ongoing operations and to service the needs of their guests.

8. Section 363(e) of the Bankruptcy Code provides that on request of an entity that has an interest in property proposed to be used by the debtor in possession, the Court shall prohibit or condition such use as is necessary to provide adequate protection of such interest. What constitutes adequate protection must be decided on a case-by-case basis. *In re Shaw Indus., Inc.,* 300 B.R. 861, 865 (Bankr. W.D. Pa. 2003). The purpose of the adequate protection requirement is to protect a secured creditor from any diminution in the value of its collateral during the reorganization process. *In re Mosello*, 195 B.R. 277, 288 (Bankr. S.D.N.Y. 1996); *Principal Mutual Life Ins. Co. v. Langhorne* (*In re 848 Brickell Ltd.*), 243 B.R. 142, 148 (S.D. Fla. 1998) ("[T]he 'adequate protection doctrine' protects a secured creditor from the diminution in value of its collateral after the petition filing date, during the course of the administration of the bankruptcy case.").

9. Examples of adequate protection are provided in Section 361 of the Bankruptcy Code and include (a) a lump sum or periodic cash payments to the secured creditor to the extent that the Debtors' use of the Cash Collateral will result in a decrease in the value of the Collateral, (b) provisions for an additional or replacement lien to the extent that the use of the property will cause a decrease in the value of the Collateral, and (c) such other relief as will result in the realization by such entity of the "indubitable equivalent" of such entity's interest in the Collateral.

4

10. The Debtors propose a limited use of Cash Collateral for the later of 30 days or until the Court holds a final hearing on the Motion. The Debtors' use of their operating cash, which includes Cash Collateral, will be limited solely to expenses essential to preserve their ongoing businesses, including payroll, insurance and inventory purchases as generally reflected in the weekly receipts and disbursement forecast attached as Exhibit B. The forecast shows that there will be no diminution in operating cash over the next five weeks. Additionally the Debtors project that over the same period (i) their accounts receivable will increase from $1.761 million at February 26, 2010 to approximately $3.159 million at April 2, 2010, and (ii) their inventory will remain relatively constant.

11. In addition to showing there will be no diminution in collateral value, the Debtors propose to adequately protect Goldman Sachs for the use of its Cash Collateral by providing Goldman Sachs: (i) a superpriority administrative claim pursuant to Section 507(b) of the Bankruptcy Code to the extent of any diminution in the value of the Cash Collateral used, and (ii) a first priority perfected replacement lien on all of the Debtors' post-petition receivables and inventory, in addition to the room revenue on which Goldman Sachs already has a lien under Section 552 of the Bankruptcy Code, with the same priority and extent as Goldman Sachs' prepetition liens (collectively, the "Postpetition Liens").

12. The Debtors' use of Cash Collateral is appropriate in accordance with these terms and conditions, and Goldman Sachs' interest in the Cash Collateral will be adequately protected by the provisions set forth in paragraph 12 above.

13. The Debtors' will give notice of this Motion to: (a) the Office of the United States Trustee for the Middle District of Florida; (b) the Internal Revenue Service; (c) counsel to Goldman Sachs and (d) the parties included on each of the Debtors' lists of twenty largest unsecured creditors (including counsel if known). No other notice is required.

## Conclusion

WHEREFORE, the Debtors request that the Court enter an order, substantially in the form attached as Exhibit C, (i) authorizing the Debtors to use Goldman Sachs' Cash Collateral, (ii) scheduling a final hearing on the Motion, and (iii) for such other relief as may be just.

Dated: March 1, 2010

SMITH HULSEY & BUSEY


By: */s/ Cynthia C. Jackson*
    Stephen D. Busey
    Cynthia C. Jackson

Florida Bar Number 117790
Florida Bar Number 498882
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (Facsimile)
cjackson@smithhulsey.com

Counsel for the Debtors

690128

6

# EXHIBIT A

**RQB Resort, LP Bank of America Accounts**

| Account No. | Type of Account |
|---|---|
| 8980 2278 4341 | Cabana Operating Account |
| 8980 2278 4338 | FF & E Account |
| 8980 2278 4325 | Starbucks Account |
| 8980 4075 4298 | Resort Account |
| 8980 2278 4309 | Operating Account |
| 8980 4168 5823 | Insurance and Tax Account |

**Sawgrass Marriott**

# Exhibit B

**Weekly Receipts and Disbursement Forecast**

**Weekly Summary**

**($ in thousands)**

| Week Ending | Week 1 to 3/5/2010 | Week 2 to 3/12/2010 | Week 3 to 3/19/2010 | Week 4 to 3/26/2010 | Week 5 to 4/2/2010 | 5 weeks to 2nd April |
|---|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ | $ |
| **Receipts** | | | | | | |
| Room Receipts | 162 | 212 | 262 | 189 | 262 | **1,087** |
| Food & Beverage Receipts | 107 | 176 | 147 | 126 | 305 | **860** |
| Other Hotel & Villa Receipts | 181 | 153 | 156 | 90 | 113 | **692** |
| Advanced Deposits | - | 50 | 50 | 50 | 50 | **200** |
| Cabana Club Membership Fee's | - | 150 | 125 | - | - | **275** |
| | | | | | | **-** |
| **Total Receipts** | **449** | **741** | **740** | **454** | **730** | **3,115** |
| | | | | | | |
| **Operating Disbursements** | | | | | | |
| Trade Creditors / Payables | (155) | (252) | (163) | (408) | (263) | **(1,240)** |
| Payroll & Benefits | - | (502) | - | (583) | - | **(1,085)** |
| Sales Tax | - | - | (218) | - | - | **(218)** |
| Professional Fee | - | - | - | - | - | **-** |
| Franchisee Fee | - | - | - | - | (106) | **(106)** |
| Mgt. Fee | - | - | - | - | (59) | **(59)** |
| Insurance | - | - | - | - | - | **-** |
| Property Tax | - | - | - | - | - | **-** |
| | | | | | | **-** |
| **Total Operational Disbursements** | **(155)** | **(754)** | **(380)** | **(991)** | **(427)** | **(2,707)** |
| | | | | | | |
| **Cash Movement in Week** | 295 | (12) | 360 | (537) | 303 | 408 |
| | | | | | | |
| **Opening Cash** | **2,814** | **3,108** | **3,096** | **3,455** | **2,918** | **2,814** |
| | | | | | | |
| **Closing Cash** | **3,108** | **3,096** | **3,455** | **2,918** | **3,221** | **3,221** |

# EXHIBIT C

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 3:10-bk-01596 |
| RQB Resort, LP and RQB Development, LP,[1] | ) | Chapter 11 |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

### ORDER (I) AUTHORIZING DEBTORS' INTERIM USE OF CASH COLLATERAL, (II) FINDING ADEQUATE PROTECTION, AND (III) SCHEDULING FINAL HEARING

These Chapter 11 cases are before the Court on an emergency hearing on the Debtors' Motion for Authority to Use Cash Collateral (D.E. \_\_\_\_) (the "Motion"). A preliminary hearing on the Motion was held on _____. Upon consideration of the Motion and having heard argument of counsel, it is

ORDERED**:**

1. The Debtors have provided adequate notice of the Motion and the preliminary hearing.

2. There will be immediate and irreparable harm to the Debtors' estates if the Debtors are not authorized to utilize Cash Collateral in order to conduct their businesses and pay their expenses.[2]

---

[1] RQB Resort, LP's tax identification number is 86-1161952. RQB Development, LP's tax identification number is 13-4322680. The principal address of each debtor is 1000 PGA Tour Boulevard, Ponte Vedra Beach, FL 32082.

[2] All terms not defined in this order shall have the meaning ascribed to them in the Motion.

3. Pursuant to Section 363(c)(2) of the Bankruptcy Code, the Debtors are authorized to use Cash Collateral through the later of _____, or until this Order is amended or superseded. The Debtors use of Cash Collateral is limited solely to the payment of those expenses set forth in the Projections attached as Exhibit A.

4. Goldman Sachs is adequately protected in respect of the Debtors' continued use of its Cash Collateral in accordance with the terms and provisions of this Order.

5. Goldman Sachs is granted an administrative expense claim under Section 503(c) of the Bankruptcy Code and a replacement lien on all post-petition accounts receivable to the same extent, validity, and priority as the security interests Goldman Sachs held as of the Petition Date, and solely to the extent of any diminution in value of the Goldman Sachs' Collateral.

6. The additional security interests and liens granted Goldman Sachs by this Order shall be deemed perfected, subject to further order of the Court, without the need for filing or recording of any instrument or UCC financing statement.

7. A final hearing on the Motion will be held before this Court on _____ \_\_, 2010.

Dated this \_\_\_\_\_ day of March, 2010 in Jacksonville, Florida.

United States Bankruptcy Judge

Copies furnished to:

Cynthia C. Jackson who shall serve a copy of this order to all parties on the "Short List" and file a certificate of service.