UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re: ) Case No. 3:10-bk-01596

RQB Resort, LP and RQB ) Chapter 11
Development, LP,[1]
) Jointly Administered

      Debtors.
)

# DEBTORS' MOTION FOR AUTHORITY
# TO CONTINUE TO USE CASH COLLATERAL

RQB Resort, LP and RQB Development, LP (collectively, the "Debtors"), move the Court pursuant to 11 U.S.C. §§ 363(c)(2) and 363(e) and Rule 4001(b)(1) of the Federal Rules of Bankruptcy Procedure, for authority to continue to use cash collateral (the "Motion"). In support of the Motion, the Debtors state:

1. On March 1, 2010 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§101 et seq., as amended (the "Bankruptcy Code"). Information regarding the Debtors, including their business operations, capital and debt structure and the events leading to the filing of these cases is contained in the Case Summary filed with the Court on the Petition Date (D.E 2).

2. The Debtors operate their businesses and manage their properties as debtors in possession pursuant to Section 1107 and 1108 of the Bankruptcy Code.

---

[1] RQB Resort, LP's tax identification number is 86-1161952. RQB Development, LP's tax identification number is 13-4322680. The principal address of each debtor is 1000 PGA Tour Boulevard, Ponte Vedra Beach, FL 32082.

These Chapter 11 cases jointly administered. No trustee, examiner or committee has been appointed in these cases.

3. When the Debtors purchased the Resort on June 30, 2006, the Debtors entered into a mortgage loan agreement (the "Loan Agreement") with Goldman Sachs Commercial Mortgage Company ("Goldman Sachs"), for up to $193 million in principal. As of the Petition Date, the outstanding principal amount owing under the Loan Agreement plus accrued but unpaid interest was approximately $193 million (the "Loan"). Also, on June 30, 2006, the Debtors entered into an Assignment of Leases and Rents (the "Assignment Agreement") and an Amended and Restated Mortgage, Assignment of Rents, Security Agreement, and Fixture Filing (the "Amended Agreement"), together with the Loan Agreement and the Assignment Agreement, the "Loan Documents") with Goldman Sachs. The Loan is secured by substantially all of the Debtors' assets (collectively, the "Collateral").

4. To the extent that Goldman Sachs' liens and security interests in the Collateral are valid, enforceable, perfected, and nonavoidable, all cash and cash proceeds of such Collateral, including cash proceeds received by the Debtors postpetition as a result of prepetition receivables constitute Goldman Sachs' "Cash Collateral" within the meaning of Section 363(a) of the Bankruptcy Code. Additionally, all postpetition "fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities" in the Debtors' Resort constitute

Goldman Sachs' "Cash Collateral" within the meaning of Sections 363(a) and 552 of the Bankruptcy Code.[2, 3]

5. On the Petition Date, the Debtors filed a motion to use cash collateral (the "Initial Cash Collateral Motion") (D.E. 9). By order dated March 4, 2010 the Court granted the Initial Cash Collateral Motion on an interim basis (D.E. 29).

6. On April 9, 2010 the Court held a hearing at the Debtors' request for a final order on the Cash Collateral Motion. By order dated April 9, 2010 the Court finally approved the use of cash collateral through May 29, 2009 (D.E. 99).

7. By this Motion, the Debtors request that the Court grant them authority to continue to use Cash Collateral in the ordinary course of their businesses pursuant to Section 363 of the Bankruptcy Code through July 27, 1010.

8. Section 363(c)(2) of the Bankruptcy Code prohibits a debtor from using cash collateral unless the secured lender consents or, after notice and hearing, the Court authorizes its use.

9. The Debtors need to use Cash Collateral to fund their day-to-day business operations. If the Debtors are unable to use Cash Collateral, the Debtors

---

[2] Revenue received by the Debtors postpetition *other* than room revenue is not Goldman Sachs' "Cash Collateral" pursuant to Section 552 of the Bankruptcy Code.

[3] Goldman Sachs does not have a perfected lien on cash which was in RQB Resort's bank accounts in Bank of America identified on the attached Exhibit A (collectively, the "BOA Accounts") on the Petition Date because the BOA Accounts were accounts in the name of the Debtor and are not under the control of Goldman Sachs. Under Florida law perfection of a security interest in a deposit account requires (i) that the secured party be the depository institution, (ii) that the depository bank has agreed to follow the secured party's directions without the debtor's consent, or (iii) the depository account is in the name of the secured party. (Fla. Stat. § 679.1041). None of these circumstances exist in this case. Accordingly, the cash held in the BOA Accounts is not cash collateral of Goldman Sachs.

will be unable to meet their obligations to Interstate Management Company, LLC ("Interstate"), the Resort's operator, which directly employs the individuals that work at the Resort, or to pay the Resort's other ordinary course business expenditures. Payment of these obligations is critical to the Debtors' ability to preserve and maintain the viability of their ongoing operations and to service the needs of their guests.

10. Section 363(e) of the Bankruptcy Code provides that on request of an entity that has an interest in property proposed to be used by the debtor in possession, the Court shall prohibit or condition such use as is necessary to provide adequate protection of such interest. What constitutes adequate protection must be decided on a case-by-case basis. *In re Shaw Indus., Inc.,* 300 B.R. 861, 865 (Bankr. W.D. Pa. 2003). The purpose of the adequate protection requirement is to protect a secured creditor from any diminution in the value of its collateral during the reorganization process. *In re Mosello*, 195 B.R. 277, 288 (Bankr. S.D.N.Y. 1996); *Principal Mutual Life Ins. Co. v. Langhorne* (*In re 848 Brickell Ltd.*), 243 B.R. 142, 148 (S.D. Fla. 1998) ("[T]he 'adequate protection doctrine' protects a secured creditor from the diminution in value of its collateral after the petition filing date, during the course of the administration of the bankruptcy case.").

11. Examples of adequate protection are provided in Section 361 of the Bankruptcy Code and include (a) a lump sum or periodic cash payments to the secured creditor to the extent that the Debtors' use of the Cash Collateral will result in a decrease in the value of the Collateral, (b) provisions for an additional or

4

replacement lien to the extent that the use of the property will cause a decrease in the value of the Collateral, and (c) such other relief as will result in the realization by such entity of the "indubitable equivalent" of such entity's interest in the Collateral.

12. The Debtors propose a limited use of Cash Collateral for the 13-week period commencing May 9, 2010 (or until July 27, 2010). The Debtors' use of their operating cash, which includes Cash Collateral, will be limited solely to expenses essential to preserve their ongoing businesses, including payroll, insurance and inventory purchases. There will be no diminution in Cash Collateral over the next 13 weeks.

13. In addition to showing there will be no diminution in collateral value, the Debtors propose to adequately protect Goldman Sachs for the use of its Cash Collateral by providing Goldman Sachs: (i) a superpriority administrative claim pursuant to Section 507(b) of the Bankruptcy Code to the extent of any diminution in the value of the Cash Collateral used, and (ii) a first priority perfected replacement lien on all of the Debtors' post-petition receivables and inventory, in addition to the room revenue on which Goldman Sachs already has a lien under Section 552 of the Bankruptcy Code, with the same priority and extent as Goldman Sachs' prepetition liens (collectively, the "Postpetition Liens").

14. The Debtors' use of Cash Collateral is appropriate in accordance with these terms and conditions, and Goldman Sachs' interest in the Cash Collateral will be adequately protected by the provisions set forth in paragraph 12 above.

## Conclusion

WHEREFORE, the Debtors request that the Court enter an order, (i) authorizing the Debtors to continue to use Goldman Sachs' Cash Collateral, (ii) scheduling a final hearing on the Motion, and (iii) for such other relief as may be just.

Dated: May 12, 2010

SMITH HULSEY & BUSEY


By: */s/ Cynthia C. Jackson*
    Stephen D. Busey
    Cynthia C. Jackson

Florida Bar Number 117790
Florida Bar Number 498882
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (Facsimile)
cjackson@smithhulsey.com

Counsel for the Debtors

690128

# EXHIBIT A

**RQB Resort, LP Bank of America Accounts**

| Account No. | Type of Account |
|---|---|
| 8980 2278 4341 | Cabana Operating Account |
| 8980 2278 4338 | FF & E Account |
| 8980 2278 4325 | Starbucks Account |
| 8980 4075 4298 | Resort Account |
| 8980 2278 4309 | Operating Account |
| 8980 4168 5823 | Insurance and Tax Account |