UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:                                              Case No: 3:10-bk-1596

RQB RESORT, LP, and                                 Chapter 11
RQB DEVELOPMENT, LP,
                                                    Jointly Administered
            Debtors.
_____/

**TRIAL MEMORANDUM OF GOLDMAN SACHS MORTGAGE COMPANY IN CONNECTION WITH DEBTORS' MOTION TO VALUE SECURED CLAIM OF GOLDMAN SACHS MORTGAGE COMPANY'S**

Pursuant to this Court's Order Setting Final Evidentiary Hearing (Doc. No. 188) (the "**Order**") on the *Motion to Value Secured Claim of Goldman Sachs Mortgage Company* (Doc. No. 166) (the "**Motion**") filed by the Debtors RQB Resort, LP and RQB Development, LP (the "**Debtors**"), Goldman Sachs Mortgage Company ("**GSMC**") submits this Trial Memorandum in connection with the trial on the Motion currently scheduled for August 25, 2010 at 9:00 a.m.:

**I.    APPLICABLE PLEADINGS**

Debtors' *Motion to Value Secured Claim of Goldman Sachs Mortgage Company* (Doc. No. 166).

**II.   THEORY OF EACH CAUSE OF ACTION**

The Motion seeks to have the Court value GSMC's secured claims. On June 14, 2010, GSMC filed a proof of claim against RQB Resort (Claim No. 40) and a proof of claim against RQB Development (Claim No. 23, and together with Claim No. 40, "**Claims**"), each asserting a claim of $195,783,259.48, secured by substantially all of the

Debtors' assets (the "**Collateral**"), which consists primarily of a full-service, golf resort lodging facility known as the Marriott Sawgrass Golf Resort & Spa. The resort opened in 1987 and features 508 rooms, five restaurants, two outdoor bars/cafes, a lounge, a spa beverage stand, a Starbuck's coffee shop, 60,469 square feet of meeting space, three outdoor pools, three outdoor whirlpools, a spa, a cabana club, two fitness centers, a specialty shop, a golf pro shop, a miniature golf course, nature paths, a business center, vending areas, and contractual rights/agreements to five championship golf courses. The Debtors purchased the Collateral in 2006 for approximately $220,500,000.00.

Based on an appraisal prepared by HVS (the "**HVS Appraisal**") and other evidence of value, GSMC believes that its Claims are secured up to at least $135,300,000.00 (approximately $266,339 per room) – the as-is value of the Collateral – and unsecured in the amount of $60,483,289.48. The Debtors, on the other hand, based on an appraisal prepared by C.B. Richard Ellis, apparently contend that the current as-is value of the Collateral at approximately $95.5 million (approximately $187,992 per room) (the **"CBRE Appraisal"**).

Both appraisals show that historically, the hotel's performance suffered a severe downturn in 2008, as with the rest of the economy. The most significant difference between the two appraisals, however, is the projection of when and how the property will recover from the downturn, based primarily on three key components of valuation of a hotel property – (i) average daily room rate (**"ADR"**) over a 10-year forecast period; (ii) the hotel's group sales business; and (iii) the terminal discount rate (a rate used to estimate the resale value of a property at the end of the holding period). The HVS

Appraisal projects that ADR for the property will eventually recover, on a deflated basis, close to its pre-recession 2008 level. CBRE, on the other hand, projects on a deflated basis that the rate will not recover to pre-recession 2008 levels, *not even by the year 2021*. The evidence will show, however, that just as the property recovered from the severe downturn after September 11, 2001, there is no reason to project that it will not make a similar recovery from the current downturn, and no reason for the Debtors to adopt unreasonably pessimistic projections for purposes of creating an artificially deflated current value for the Collateral.

Another key component of valuing resort properties is the level of its group business, which similarly experienced a significant drop-off from the approximately 60% level during and prior to 2008. As will be demonstrated at the hearing, the group business drives higher ADR and greater revenue from food and beverage and other amenities at the resort. CBRE assumes that the percentage of group business at the resort will remain at its current level of 50% for the foreseeable future, whereas, HVS assumes that group business will recover to 57% – not quite its pre-recession 2008 level, but fairly close. Again, based on the past performance of the hotel and its recovery from September 11, 2001, the evidence will show that there is no reason to believe that it will not make a similar recovery here. The CBRE Appraisal makes incredibly unreasonable assumptions and projections in this regard as well.

Finally, inherent in the valuation process is the assumption of a sale at the end of a ten-year holding period. The estimated reversionary sales price as of that date is calculated by capitalizing the projected eleventh-year net income by an overall terminal

3

capitalization rate. The evidence will show that CBRE uses an unreasonably large terminal capitalization rate of 9.25%, which results in a significantly lower value for the Collateral than the HVS Appraisal, which uses a more realistic 7% rate. As the evidence will show, HVS's application of a 7% terminal capitalization rate reflects the current trends in hotel lending. This rate also takes into consideration the long-term development potential of the site, including specifically the opportunity to develop as many as 500 residential units on the site.[1]

The CBRE Appraisal, on the other hand, values the development potential by assuming a sale of the development parcel and development rights in year 2017, at a price established with depressed comparables from years 2009/2010, and then discounts the $12 million resulting price ($20,000 per unit) back to 2010 dollars using an 11.5% discount rate, to reach a present value of $5,600,400 ($9,334 per unit), a per unit value that is 92.5% lower than the $125,000 per unit price concluded by CBRE in its 2006 appraisal.

GSMC believes that the HVS Appraisal realistically values the property and includes realistic and credible assumptions based upon current market conditions, comparable properties, and other relevant economic data. In fact, the HVS Appraisal at $135,000,000.00 is only approximately 45% of the Debtors' appraised value of $306,000,000.00 as of December 31, 2008 (assuming certain redevelopment of the villas and condominiums), which appraisal date was after real estate values and the economy tumbled. And that appraisal preceded the Debtors' petitions by just over one year.

---

[1] Absent this development potential, HVS indicates that it would have used an 8.5% terminal capitalization rate – still well lower than the unrealistic 9.25% rate used by CBRE.

4

The 2010 CBRE Appraisal, on the other hand and following every incentive of the Debtors to lowball the value, grossly undervalues the property, and incredibly assumes that it will *never* recover to pre-recession 2008 levels, and that the real estate market for the property will remain depressed *ad infinitum.*  Similarly, the evidence also will show that CBRE values the property grossly lower than potentially interested purchasers, investors, and even the Debtors' own December 31, 2008 appraisal that valued the property at $306,000,000.00 with proposed redevelopment of golf villas and condominiums.

Thus, GSMC believes, and the Court should find, that the HVS Appraisal is more credible than the CBRE Appraisal, and that HVS's valuation should be adopted by the Court.

## III. STATEMENT OF UNCONTESTED FACTS

GSMC's Proof of Claim reflects outstanding indebtedness due GSMC of more than $195 million, and the Debtors acknowledge in their pleadings that the amount owed to GSMC is at least $193 million.  There may also be additional liens and encumbrances on the Collateral.

As of December 31, 2008, PKF Consulting Corporation valued the Collateral at more than $300 million.  *See* Case Management Summary, at ¶ G [D.E. #2].  The HVS Appraisal recently appraised the current as-is value of the Collateral at $135.3 million. The CBRE Appraisal appraised the current as-is value of the Collateral at approximately $95.5 million.

## IV. STATEMENT OF CONTESTED FACTS

GSMC and the Debtors disagree as to the value of the Collateral securing GSMC's Claims. Based upon the HVS Appraisal and other evidence of value, GSMC believes the as-is value of the Collateral is at least $135.3 million. The Debtors, however, based upon the CBRE Appraisal, contend that the value of the Collateral is approximately $95.5 million.

## V. STATEMENT OF LEGAL ISSUES (including legal authorities)

The Court's valuation of GSMC's secured claims is primarily factual, and will be determined after hearing expert testimony regarding the value of the Collateral. *See In re Star Trust*, 237 B.R. 827, 834-835 (after hearing testimony from expert witnesses regarding the value of the secured creditor's claims, the court found that the valuation proposed by the secured creditor's expert witness was reasonable and supported by his testimony); *La Jolla Mortg. Fund v. Rancho El Cajon Associates*, 18 B.R. 283, 288 (Bankr. S.D. Cal. 1982) (noting that the valuation process is not an exact science and that the court must consider estimates and approximations founded upon expert opinions and assumptions); *In re Grundstrom*, 14 B.R. 791, 793 (Bankr. D. Mass. 1981) (court must attempt to make a reasonable determination based upon the evidence, which may include expert opinions, presented during this trial). In fact, the bankruptcy court possesses considerable discretion in determining the best evidence to demonstrate value of collateral,[2] though valuation standards should be clear, and should be applied consistently.

---

[2] Type of Evidence the Court may Consider in Determining Value of Collateral:

**VI.   CONSENT TO JURISDICTION OF THE COURT**

GSMC consents to the jurisdiction of this Court for purposes of this core proceeding.

**VII.   CONFERRED WITH OPPOSING COUNSEL**

Counsel for GSMC has conferred with counsel for the Debtors and has made a good faith effort to resolve this matter in advance of the final evidentiary hearing.

---

With respect to the type of evidence that may be used to demonstrate value, this determination will also depend on the circumstances. In general, such evidence may take the form of appraisals, investment banker opinions, expert testimony, testimony of the parties, offers of purchase for the subject property, insurance policy coverage, trade journals and other published source of prices, and less formalized evidence regarding prices obtained from the sale of similar property. Evidence may relate to the most reasonable method of purchase or sale, the attributes of the seller, and the value of the property with these factors in mind. However, value testimony by nonexperts is often viewed as unpersuasive, if not inadmissible.

3 Collier on Bankruptcy ¶ 503.3[9] (rev. 15th ed. 2010).

Respectfully submitted this 13th day of August, 2010.

>GREENBERG TRAURIG, P.A.
>*Attorneys for Goldman Sachs Mortgage Company*
>1221 Brickell Avenue
>Miami, Florida 33131
>Telephone: (305) 579-0500
>Facsimile: (305) 579-0717
>
>
>By: /s/ John B. Hutton
>      JOHN B. HUTTON
>      Florida Bar No. 902160
>      huttonj@gtlaw.com
>      SCOTT M. GROSSMAN
>      Florida Bar No. 0176702
>      grossmansm@gtlaw.com
>      ARI NEWMAN
>      Florida Bar No. 56575
>      newmanar@gtlaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 13, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List attached to the original hereof, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing on August 16, 2010.

>/s/ John B. Hutton
>     JOHN B. HUTTON

## SERVICE LIST

## Electronic Mail Notice List

The following is the list of **parties** who are currently on the list to receive e-mail notice/service for this case.

Lindsey C. Brock on behalf of Creditor Monique Rigby
brock@rumrelllaw.com

Betsy C Cox on behalf of Creditor PGA Tour, Inc.
bcox@rtlaw.com, aruff@rtlaw.com

Gardner F. Davis on behalf of Creditor Marriott International, Inc.
gdavis@foley.com, khall@foley.com;dpbarnes@foley.com;jwolfel@foley.com

Joseph D Frank on behalf of Other Prof. Jones Lang LaSalle Americas, Inc.
jfrank@fgllp.com, ccarpenter@fgllp.com;jkleinman@fgllp.com;rheiligman@fgllp.com

John B Hutton on behalf of Creditor Goldman Sachs Mortgage Company
huttonj@gtlaw.com,
thompsonc@gtlaw.com;MiaLitDock@gtlaw.com;miaecfbky@gtlaw.com

Cynthia C. Jackson on behalf of Debtor RQB Development, LP
cjackson@smithhulsey.com,
tcopeland@smithhulsey.com;kgammill@smithhulsey.com;zwarren@smithhulsey.com

Ari Newman on behalf of Creditor Goldman Sachs Mortgage Company
newmanar@gtlaw.com, miaecfbky@gtlaw.com

Miriam G Suarez on behalf of U.S. Trustee United States Trustee - JAX 11
Miriam.G.Suarez@usdoj.gov

United States Trustee - JAX 11
USTP.Region21.OR.ECF@usdoj.gov

Alan M. Weiss on behalf of Creditor Interstate Hotels & Resorts, Inc.
alan.weiss@hklaw.com

# Manual Notice List

RQB Resort, LP
1000 PGA Tour Blvd.
Ponte Vedra Beach, FL 32082-3036

Internal Revenue Service
Centralized Insolvency Operations
P.O. Box 21126
Philadelphia, PA  19114-0326

Interstate Hotel & Resort Inc.
4501 N. Fairfax Dr.
Arlington VA  22203

Marriott International Inc.
13682 Collection Center Dr.
Chicago IL  60693

Beaches Energy Services
P.O. Box 51389
Jacksonville Beach FL 32240

St. Johns County Utility Dept. St.
P.O. Box 1988
Saint Augustine FL 32085

Ibahn
P.O. Box 51259
Los Angeles CA 90051

Sawyer/Mobile Gas
98 S. Penman Rd.
Jacksonville Bea FL 32250

Cendyn
1515 North Federal Highway
Suite 419
Boca Raton FL 33432

Edward Don & Company
2562 Paysphere Circle
Chicago IL 60674

Jones Lang LaSalle Americas
153 East 53rd Street
33rd Floor
New York NY 10022

Carey Jax - A#852011
5320 Springfield Blvd.
Jacksonville FL 32208

Chase Merchant Services
P.O. Box 407172
Fort Lauderdale FL 33340

Sawgrass Country Club
10034 Golf Club Drive
Ponte Vedra Beach FL 32082

Marsh Landing Country Club
25655 Marsh Landing Parkway
Ponte Vedra Beach FL 32082

AVI Rental Services Division
P.O. Box 62257
Baltimore MD 21264

Seaboard Waste Systems
P.O. Box 9001099
Louisville KY 40290

Produce Distribution Center
2280 West 21st Street
Jacksonville FL 32209

J C Stanford & Son, Inc.
5666 Summerall Road
Jacksonville FL 32216

Lodge Net
3900 W. Innovation St.
Sioux Falls SD 57107

Copytronics Inc.
2461 Rolac Road
Jacksonville FL 32207

John J. Wolfel Jr
PO Box 240
Jacksonville, FL 32201-0240

Smith Hulsey & Busey
225 Water Street
Suite 1800
Jacksonville, FL 32202

Interstate Sawgrass, LLC
c/o Karen Lee Turner
Eckert Seamans Cherrin & Mellott, LLC
50 South 16th Street, 22nd Floor
Philadelphia, PA 19102

*MIA 181,374,001v5 8-13-10*