**UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 3:10-bk-01596 |
| RQB Resort, LP and RQB Development, LP,[1] | ) | Chapter 11 |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

**MOTION FOR RECONSIDERATION**

RQB Resort, LP and RQB Development, LP (collectively, the "Debtors"), move the Court pursuant to Rule 60, Federal Rules of Civil Procedure, as made applicable to these cases by Rule 9024, Federal Rules of Bankruptcy Procedure, for reconsideration of the Court's order dated January 6, 2011, valuing the secured claim of Goldman Sachs Mortgage Company ("Goldman Sachs") at $132 million (ECF No. 364; the "Valuation Order"), in support state:

**Summary of the Motion.**

The Court erred in adopting the HVS Final Appraisal in its entirety because HVS's appraisal included the value of 450 TPC Golf Memberships which do not exist. Moreover, when the memberships come into existence, they will not be part of the collateral securing Goldman Sachs' loan to the Debtors. Instead, once created, the value of the TPC Golf Memberships will inure to the benefit of the Debtors' unsecured creditors. For these

---

[1] RQB Resort, LP's tax identification number is 86-1161952. RQB Development, LP's tax identification number is 13-4322680. The principal address of each debtor is 1000 PGA Tour Boulevard, Ponte Vedra Beach, FL 32082.

reasons, the Debtors request the Court to reconsider its Valuation Order and reduce its valuation of Goldman Sachs' secured claim by the value of the TPC Golf Memberships (which, according to the evidence, is at least $18 million).

**The Motion.**

1. By motion dated August 17, 2010, the Debtors asked the Court to value the secured claim of Goldman Sachs, the Debtors' largest creditor, for purposes of confirming a plan of reorganization (ECF No. 166; the "Motion to Value").[2]

2. The Court held a final evidentiary hearing on the Motion to Value on December 9 and 10, 2010 (the "Valuation Hearing").

3. At the Valuation Hearing, the Debtors submitted evidence regarding the value of Goldman Sachs' secured claim, including an appraisal dated November 19, 2010, prepared by Colliers International Valuation & Advisory Services ("Colliers"). Colliers valued Goldman Sachs' secured claim at $88.9 million (the "Colliers Appraisal"). Debtors' Exhibit 2.

4. Goldman Sachs placed in evidence at the Valuation Hearing an appraisal dated as of April 15 (the "April Appraisal") and a November 23 updated summary appraisal, both prepared by HVS Consulting and Valuation Services, a Division of Hotel Appraisals, LLC ("HVS"). The updated November appraisal valued Goldman Sachs' secured claim at $132 million (the "HVS Final Appraisal").

---

[2] Goldman filed identical claims in both cases - Proof of Claim No. 40 filed against RQB Resort and Proof of Claim No. 23 filed against RQB Development, both in the amount of $195,783,259.48.

5. One of the principal reasons for the $43 million difference in value between the HVS Final Appraisal and the Colliers Appraisal is that the HVS Final Appraisal included the value of the Debtors' contractual right to sell 450 golf memberships in the Tournament Players Club at Sawgrass, Inc. to the public, (the "TPC Golf Memberships"). The Colliers' Appraisal did not.

6. The evidence before the Court at the Valuation Hearing—which is not disputed—showed that the TPC Golf Memberships (and the Debtors' right to sell them) do not yet exist. The Debtors' emphasized this point in closing argument:

> "Ms. Jones included, as a component in her appraisal, the [TPC Golf Memberships]. Mr. Gisclair did not.
>
> The unrebutted evidence before the Court, as an admission [by] Goldman Sachs, is that when those memberships come into existence—*and they're not now*—they will be worth $22 million, $50,000 a piece. That's a pretty noterial [notable] distinction in the two appraisals.
>
> > Transcript of Valuation Hearing, ("Transcript") p. 757, lines 13-23 (emphasis added).

7. At the conclusion of the Valuation Hearing (on December 9) the Court took the matter under advisement. On December 30, 2010 the Court ruled from the Bench on the Motion to Value. In doing so, the Court stated that it was accepting the HVS Final Appraisal for its valuation. Transcript of Ruling, p. 19-20.

8. Therefore, for the Valuation Order to be correct, the Court would have to *find* that the TPC Golf Memberships exist (at the time of the appraisal) and *conclude* that those memberships are part of Goldman Sachs' collateral. There is no evidence in the

record that would support a finding of fact that the TPC Golf Memberships exist. Moreover, even if the Court could make such a finding, any conclusion that the TPC Golf Memberships are part of Goldman Sachs' collateral as of the valuation date (and thus, part of the value of Goldman Sachs' secured claim) would be contrary to law.

9.  The evidence before the Court at the Valuation Hearing regarding these issues includes the following:

- In connection with the Debtors' purchase of the Resort[3] in 2006, the Debtors assumed a 1989 agreement with the PGA Tour, Inc. (the "Tour") by which the Debtors received, among other matters, the right to control 85% of the tee times at THE PLAYERS Stadium and Dye's Valley golf courses until the year 2089. In exchange, the Debtors assumed the obligation to allow the Tour to close THE PLAYERS Stadium for the week prior to THE PLAYERS Championship golf tournament for course maintenance (the "Existing Courses Agreement"). Debtors' Exhibit 12.

- On November 6, 2008, the Debtors entered into an amendment to the Existing Courses Agreement (the "Amended Courses Agreement") with the Tour and the Tournament Players Club at Sawgrass, Inc. (the "TPC")[4]. Debtors' Exhibit 12.

- Also on November 6, the Debtors entered into another agreement with the Tour and the TPC (the "Letter Agreement") which states: "It is the intent of the parties that the [Amended Courses Agreement] shall become effective and binding on the parties and shall supersede the [Existing

---

[3] All capitalized terms not defined in this motion have the meaning ascribed to them in the Case Summary (ECF No. 2).

[4] After the Existing Courses Agreement was executed, the Tour transferred the golf courses to the Club.

4

Courses Agreement] only upon the occurrence of the condition precedent hereinafter set forth." Debtors' Exhibit 13 (emphasis added).

- By the Letter Agreement, the parties agreed that the Amended Courses Agreement would be "effective only upon the earlier to occur of the following conditions precedent: (i) written consent by Goldman Sachs or (ii) termination of the existing relationship between RQB and Goldman Sachs". Debtors' Exhibit 13.

- To date, Goldman Sachs has not consented to the Amended Courses Agreement.[5] Transcript, page 257, line 19 - p. 238, line 21.

- When and if the Amended Courses Agreement becomes effective, the Debtors will have the rights to the TPC Golf Memberships and the Debtors will be able to sell them to the public. In exchange for these rights, the Debtors will allow the TPC to close THE PLAYERS Stadium for an additional two week period prior to THE PLAYERS Championship golf tournament. Debtors' Exhibit 13.

10. The following evidence in the record shows that Goldman Sachs acknowledges that the TPC Golf Memberships did not exist as of the Petition Date (or even as of the date of the Valuation Hearing):

- *Prior* to the Petition Date, Goldman Sachs placed, variously, a value on the TPC Golf Memberships at $40,000 apiece (or $18 million) and up to $50,000 a piece (or $22.5 million) in different 2009 quarterly loan reports. Debtors' Exhibit 5, GS-MTV-000433 and 000445.

---

[5] Nothing in the Loan Documents between Goldman Sachs and the Debtors requires the Debtors to obtain Goldman Sachs' consent to amend the Existing Courses Agreement. In connection with the Loan however, Goldman Sachs and *the Tour* executed an Acknowledgement and Agreement (dated June 30, 2006) by which *the Tour* agreed that it would not modify the Existing Courses Agreement without Goldman Sachs' consent.

5

- *After* the Petition Date, because Goldman Sachs had not consented to the Amended Courses Agreement (and thus the condition precedent to its effectiveness has not been met), Goldman Sachs stated in its First Quarter 2010 loan report that Goldman Sachs ascribed *no* value to the TPC Golf Memberships stating: "no value given to *proposed* 450 PGA golf membership given that the amendment to the [Existing Courses Agreement] which creates them has not been signed." Debtors' Exhibit 5, GS-MTV-000457 (emphasis added).

- Anne Lloyd-Jones acknowledged at the Valuation Hearing that the Debtors do not have any present right to the TPC Golf Memberships:

    Mr. Busey:

    Q. So do you have an understanding whether or not today RQB has a right [to] or possesses those 450 TPC Memberships or not?

    A. Since the [Amended Courses Agreement] was not signed off on by Goldman Sachs, I would conclude that RQB doesn't currently possess those memberships.

    Q. Does or does not?

    A. Does not currently possess those memberships.

    Transcript, p. 643, lines 5-14.

11. In spite of this evidence showing that the "proposed" (Goldman Sachs's language) memberships do not exist, the following evidence showed that Ms. Jones *included* the memberships in her valuation:

6

- The HVS April draft report for $135.5 million expressly valued the TPC Golf Memberships:

  > "Property Rights appraised: The property rights appraised are the fee simple ownership of the land and improvements, including the furniture, fixtures and equipment. … In addition, *the hotel holds the rights to 450 memberships at the adjacent TPC at Sawgrass*".
  >
  > Debtors' Exhibit 3, R003-0007 (Emphasis added).

- Anne Lloyd-Jones testified that although she removed the foregoing the *language* describing that "the hotel holds the rights to 450 memberships," she nevertheless *included the value* of the memberships in her April Appraisal :

  > Q. And when you took out that language--so you took out the fact that the TPC memberships were a component of what was being valued. Did you change the valuation, the [$20.9 million] you had in there for development rights?
  >
  > A. No, I did not.
  >
  > Q. So you took out a component of what was being valued, but you did not change the valuation?
  >
  > A. I took out language referring to the memberships, but I did not change the valuation.
  >
  > Transcript, p. 638, lines 1-13.[6]

---

[6] Because Ms. Jones omitted the description of the 450 TPC Golf Memberships from her April Report, the Debtors assumed that she had taken out the *value* of the memberships as well. The Debtors did not learn that Ms. Jones had included the value of the TPC Golf Memberships in the HVS Final Appraisal until the Debtors were able to depose her, *twelve days* before the Final Valuation Hearing.

7

- As written, the HVS Final Appraisal shows that Ms. Jones' $20.9 value for "development rights" included the TPC Golf Memberships:

    > "Current ownership has secured the rights to 450 memberships in the [TPC] and the hotel controls 85% of the tee times at the club. These memberships could be 'packaged' with the residential units, which would enhance the appeal and marketability of the units and thus the development opportunity."

    Goldman Sachs' Exhibit 2, p. 12.

- Ms. Jones also testified that the TPC Golf Memberships are included in her $20.9 million value of the development rights, and thus in her $132 million appraisal, but that she did not know the value of the memberships alone:

    Mr. Busey:

    Q. So what portion of the $20.9 million value you subscribed to the development rights in November are attributable to the TPC Memberships, the 450 TPC memberships?

    A. I haven't calculated the specific attributions between the many components that make up the development entitlements.

    Q. I think what you just said is you don't know?

    A. Correct.

    Transcript, p. 645, lines 12-21.

12. Moreover, at the conclusion of the hearing Goldman Sachs took a different position on the existence of the TPC Golf Memberships:

- At the conclusion of the Court's ruling on the Motion to Value, when Mr. Busey pointed out to the Court that the HVS Final Appraisal included the value of the TPC Golf Memberships which do not exist (and therefore were not part of Goldman Sachs' collateral), Mr. Hutton represented to the Court that the TPC Golf Memberships exist and *are* part of Goldman Sachs' collateral:

> Mr. Hutton:
> For the record, Your Honor, we do consider it to be part of our collateral.
> 
> Transcript of Ruling, p. 24, lines 3-4.

13. The evidence also showed that the Colliers Appraisal did *not* include the value of the TPC Golf Memberships:

> Mr. Busey:
> 
> Q. Did you hear Ms. Jones say that within a component of her valuation, was the 450 TPC Memberships?
> 
> A. Yes, she did.
> 
> Q. Is it in yours?
> 
> A. No, it is not.
> 
> Transcript, p. 718, line 23 - p. 719, line 3.

14. Although Ms. Jones said she did not know the value of the memberships alone, record evidence shows that Goldman Sachs valued the proposed TPC Golf

9

Memberships at either $40,000 apiece ($18 million) or up to $50,000 apiece (or $22.5 million). Debtors' Exhibit 5, GS-MTV-000443 and 000445.

**Argument.**

15. Rule 9024, Federal Rules of Bankruptcy Procedure, adopts Federal Rule 60 and allows a Bankruptcy Court to reconsider its prior ruling based upon a mistake of fact or law. *See, e.g.*, *Parks v. U.S. Life & Credit Corp.*, 677 F.2d 838 (11th Cir. 1982). In *Parks*, the Eleventh Circuit adopted the law of the Fifth Circuit in *Meadows v. Cohen*, 409 F.2d 750, 752-753 (5th Cir. 1969):

> It is the view of this Court that under the present rule, a court is authorized under subsection (1) [of Rule 60(b)] to correct a substantive "mistake" of its own, if motion is made within a reasonable time, which would clearly encompass a time not exceeding the time allowed for appeal.
>
> *Meadows,* 409 F.2d at 752, n. 4.

16. This Motion for Reconsideration was filed within the time in which the Debtors had the right to appeal from the Valuation Order and thus, Rule 60 is applicable. The Court's adoption of the HVS Final Appraisal in its entirety was a mistake.

17. The undisputed evidence before the Court is that the Amended Courses Agreement was not in effect on the Petition Date (and is still not in effect). For that reason the TPC Golf Memberships do not exist. Moreover, when and if the Amended Courses Agreement becomes effective, the TPC Golf Memberships will not be a part of Goldman Sachs' collateral. Section 552(a) of the Bankruptcy Code expressly limits

(with inapplicable exceptions) a secured creditors' lien to collateral held by the Debtors on the petition date and *not* to property acquired thereafter:

> Property acquired by the estate or by the debtor after the commencement of the case is *not* subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.
>
> *In re Jones*, 908 F.2d 859, 860 (11th Cir. 1990) (*citing* § 552(a)) (emphasis added).

18. The Debtors concede that Goldman Sachs's prepetition security interest includes all of the Debtors' intangibles and that an intangible ordinarily would include contractual rights such as those provided by the Amended Courses Agreement. Here however, the condition precedent to the Amended Courses Agreement becoming effective (Goldman Sachs's consent) did not occur prepetition. The Debtors therefore had no rights to the TPC Golf Memberships as of the Petition Date.

19. For a secured creditors' security interest to attach to a general intangible, the debtors must have acquired the intangible as of the petition date. If the debtor's rights accrue postpetition, Section 552 prevents the security agreement from attaching to the collateral. If the Debtor's interest in an intangible is *contingent* as of the petition date, no such "right" exists:

> [A] debtor cannot acquire "rights" in a mere expectancy. That is to say, a debtor cannot acquire rights in an item that

may or may not come into existence based upon certain contingencies occurring in the future.

*In re TMCI Electronics, Inc.*, 279 B.R. 552, 560 (Bankr. N.D. Cal. 1999).[7]

20. Because the Debtors' rights under the Amended Courses Agreement (and therefore the TPC Golf Memberships) were contingent as of the Petition Date (and as of the valuation date), the value of those memberships—if created—will inure to the benefit of the Debtors' *unsecured creditors* pursuant to Section 552(a), and not to Goldman Sachs.

21. For all these reasons, the Debtors respectfully request that the Court reconsider its Valuation Order and reduce its value of Goldman Sachs' secured claim to, at most, $114 million.

Dated: January 20, 2011.

SMITH HULSEY & BUSEY

By: */s/ Cynthia C. Jackson*
    Stephen D. Busey
    Cynthia C. Jackson

Florida Bar Number 498882
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)
cjackson@smithhulsey.com

Counsel for the Debtors

---

[7] *TMCI* held that until the end of a tax year a tax refund is contingent and too remote for a debtor to acquire any rights to it and thus, where the tax year ended postpetition, any such refund was 'after acquired' property and not subject to secured creditor's interest.