# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 3:10-bk-01596 |
| RQB Resort, LP and RQB Development, LP, | ) | Chapter 11 |
| | ) | Jointly Administered |
| Debtors. | ) | |
| _____ | ) | |

## MOTION TO COMPEL

RQB Resort, LP and RQB Development, LP (collectively, the "Debtors"), move the Court pursuant to Rule 7037, Federal Rules of Bankruptcy Procedure, for an order compelling Goldman Sachs Mortgage Company ("Goldman") to produce documents responsive to the Debtors' first request to produce in connection with the Debtors' motion to assume an amended and restated courses agreement (the "Restated Courses Agreement") and reject a related agreement (ECF No. 410; the "Motion to Assume and Reject"), and in support state:

1.     On February 11, 2011, the Debtors filed their Motion to Assume and to Reject by which the Debtors seek to (i) assume a November 6, 2008 amended and restated courses agreement among the Debtors, the PGA Tour, Inc. (the "Tour") and the Tournament Players Club at Sawgrass, Inc. (the "TPC") and (ii) reject a related agreement with the Tour and TPC which provides that the Restated Courses Agreement will not "become effective" without Goldman's consent (the "Letter Agreement").

2.     If the Motion to Assume and Reject is granted, the Debtors will bring additional value to these estates, including the right to sell 450 TPC golf memberships to the public.  The Debtors and Goldman dispute whether Goldman has a security interest in that additional value.  There is no dispute, however, that additional value *will be* forthcoming from this fundamental exercise of the Debtors' business judgment.

3.     To date Goldman has withheld its consent to the Restated Courses Agreement in order to use its consent as leverage to compel the Debtors' to grant Goldman extraordinary concessions that are not in the Debtors' interests (including, among other things, granting Goldman a security interest in the golf memberships).

4.     On February 22, 2011, Goldman filed a response to the Motion to Assume and Reject arguing that the Debtors should be required to (i) assume *both* the Restated Courses Agreement and the Letter Agreement and (ii) accept Goldman's required concessions (ECF No. 424; the "Response").  Goldman contends in its Response that Goldman has had "productive discussions" with the PGA Tour regarding Goldman's conditions for its approval of the Restated Courses Agreement.

5.     The Court held a preliminary hearing on the Motion to Assume and Reject on February 23, 2011.  At the conclusion of the hearing, the Court granted the Debtors' request to file a reply to Goldman's Response (which Goldman filed the evening before the hearing), in order to demonstrate that there is no need for an evidentiary hearing regarding the motion.  The Court permitted Goldman an opportunity to file a sur-reply within 15 days of the Debtors' reply.

6.      In the interim, in order to avoid any delay in the event an evidentiary hearing were necessary, the Debtors served Goldman on March 2 with a request for production of documents in connection with the Motion to Assume and Reject (the "Request to Produce").  The Request to Produce contained five narrow requests for documents regarding Goldman's alleged communications with the PGA Tour and other parties regarding the Restated Courses Agreement.  The requests quoted from Goldman's Response, and asked Goldman to produce the documents supporting its assertions.  A copy of the Request to Produce is attached as Exhibit A.

7.      On March 16, 2011, the Debtors filed their reply to Goldman's Response (seven days earlier than required by the Court) explaining why the Court should consider the Motion to Assume and Reject without an evidentiary hearing (ECF No. 437; the "Reply").  Fifteen days later, on April 1, Goldman filed a 24 page sur-reply, again contending that Goldman has been in "productive discussions with the Tour and the TPC" regarding the requested concessions (ECF No. 455; the "Sur-Reply").  Sur-Reply, p. 16.[1]

8.      Despite Goldman's continued assertion that it has been in communication with the PGA Tour regarding Goldman's required concessions, Goldman served the Debtors on April 1 with a response to the Debtors' Request to Produce in which it refused to produce *any* documents (the "Discovery Response").  Goldman's response consists of eleven pages (more than 20 paragraphs) of objections

---

[1]    In the Sur-Reply, Goldman continues to argue that the Court must determine whether Goldman has a security interest in the TPC Memberships before it may grant the Motion to Assume and Reject.  As the Court itself noted in its March 23 ruling on the Debtors' Motion for Reconsideration, no such determination is necessary at this time.  The Debtors submit that the Court should grant the Motion to Assume and Reject, thereby entitling the estate to the TPC golf memberships, and determine at a later date, if necessary, whether they constitute Goldman's collateral.

to *every one* of the Debtors' five requests for documents. A copy of the Discovery Response is attached as Exhibit B.

9.     Goldman's complete stonewall of the Debtors' document request is not only obstreperous, it is inconsistent with the Bankruptcy Court's practice of professional and open discovery, and further indicative of the unfortunate litigiousness coloring these proceedings.

10.     The Debtors believe the Court can and should grant the Motion to Assume and Reject without further hearing. In the meantime, however, in the interest of expediting these proceedings, the Debtors have the right to request and review documents relevant to Goldman's own allegations in response to the Motion to Assume and Reject.

11.     In the Debtors' motion to extend exclusivity (ECF No. 436), the Debtors explained why they needed an extension of their exclusivity period for 60 days *after* the Court rules on (i) the Debtors' motion for reconsideration *and* (ii) the Motion to Assume or Reject. The Court subsequently entered an order granting the Debtors an extension, but only for 60 days after the expiration of the current exclusivity period; that is, to June 7, 2011 (ECF No. 454; the "Extension Order"). The Extension Order nevertheless expressly provided that its ruling is "without prejudice to the Debtors filing a future Motion to Extend Exclusivity Periods". Extension Order, p. 2.

12.     The Bankruptcy Code and Rules are intended to provide parties with access to all relevant information. Goldman's refusal to respond to the Debtors'

legitimate discovery requests while strenuously resisting any extension of exclusivity is illustrative of the difficulty with the Debtors' reorganization.

WHEREFORE, the Debtors request that the Court enter an order compelling Goldman to produce documents responsive to the Document Request within three business day of entry of the order.

Certificate of Good Faith

The undersigned counsel has in good faith conferred with counsel for Goldman regarding its unwillingness to produce the requested documents. The parties have been unable to agree, thus necessitating this motion.

Dated: April 4, 2011.

SMITH HULSEY & BUSEY


By: _/s/ Cynthia C. Jackson_
     Stephen D. Busey
     Cynthia C. Jackson

Florida Bar Number 498882
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)
cjackson@smithhulsey.com

Counsel for the Debtors

## Certificate of Service

I certify that a copy of the foregoing was furnished electronically to those parties who have appeared in this case, this 4th day of April, 2011.


_/s/ Cynthia C. Jackson_
Attorney

00749987

**Exhibit A**

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 3:10-bk-01596 |
| RQB Resort, LP and RQB | ) | Chapter 11 |
| Development, LP,[1] | ) | Jointly Administered |
| Debtors. | ) | |
| _____ | ) | |

## DEBTORS' FIRST REQUEST FOR PRODUCTION OF
## DOCUMENTS TO GOLDMAN SACHS MORTGAGE COMPANY
### (Motion to Assume TPC Agreement
### and to Reject Related Agreement)

Pursuant to Rule 7034, Federal Rules of Bankruptcy Procedure, RQB Resort, LP and RQB Development, LP (collectively, the "Debtors") serve the following requests for production of documents to Goldman Sachs Mortgage Company ("Goldman Sachs") in connection with the Debtors' motion to assume TPC Agreement and to reject related agreement (ECF No. 410; the "Motion"). The Debtors request that Goldman Sachs permit the Debtors to inspect and copy each of the following items at the offices of Smith Hulsey & Busey, 225 Water Street, Suite 1800, Jacksonville, Florida 32202, within 30 days of the date of service of this request:

---

[1] RQB Resort, LP's tax identification number is 86-1161952. RQB Development, LP's tax identification number is 13-4322680. The principal address of each debtor is 1000 PGA Tour Boulevard, Ponte Vedra Beach, FL 32082.

SMITH HULSEY & BUSEY

By: _____
Cynthia C. Jackson

Florida Bar No. 498882
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)
cjackson@smithhulsey.com

Attorneys for the Debtors

## Instructions

1.     In response to this request, Goldman Sachs is required to furnish all documents in its possession, custody or control, or in the possession, custody or control of Goldman Sachs' past or present agents, attorneys, accountants, advisors, employees, or any other persons acting on Goldman Sachs' behalf.

2.     To the extent that any of the following requests call for documents which Goldman Sachs believes are subject to a claim of privilege, Goldman Sachs shall produce all responsive documents, not subject to any claim of privilege and shall, with respect to any allegedly privileged documents, provide a statement setting forth as to such documents the following:  (a) the nature and source of the allegedly privileged documents; (b) the factual basis for the claim of privilege; (c) the legal basis for the claim of privilege; (d) a description of each such document by date, author, recipient and subject matter; and (e) the identity of all persons who have received copies of or have knowledge of the document and information contained therein, including a description of the source of their knowledge.

## Definitions

For the purpose of this request for the production of documents, the following definitions apply:

The singular includes the plural and the past tense includes the present tense, and vice versa; the words "and" and "or" shall be construed either conjunctively or disjunctively to bring within the scope of these interrogatories any information which might otherwise be construed to be outside their scope; the word "all" means "any and all"; the word "any" means "any and all"; and the word "including" means "including without limitation."

"Acknowledgement and Agreement" means the acknowledgement and agreement executed by the Tour and TPC Sawgrass on June 29, 2006 and delivered to Goldman in connection with its loan to the Debtors on June 30, 2006.

"Communication" or "communications" means every manner or means of disclosure, transfer or exchange, and every disclosure, transfer or exchange of information whether electronically, orally or face-to-face or by telephone, mail, personal delivery, document or otherwise.

"Documents" shall have the same meaning as in Rule 7034, Federal Rules of Bankruptcy Procedure, and shall include, without limiting the generality of the foregoing, correspondence, contracts, agreements, leases, memoranda, notes, calendar and diary entries, memoranda or notes of conversations and of meetings,

studies, reports, offers, inquiries, bulletins, summaries, newsletters, compilations, charts, graphs, photographs, film, microfilm, articles, announcements, books, books of account, ledgers, vouchers, canceled checks, invoices, bills, opinions, certificates, transcripts and all other tangible things upon which any handwriting, typing, printing, drawings, representation, magnetic or electrical impulses, or other form of communication is recorded. The foregoing definition includes originals of documents and all copies that are different in any way from the original.

"Electronically stored information" or "ESI" shall have the same meaning as in Rule 34, Federal Rules of Civil Procedure, and shall include, without limiting the generality of the foregoing, all electronic, mechanical, magnetic or optical records or representations of any kind including, without limitation, computer files and programs, tapes, cassettes, discs, recordings, metadata and information stored on a computer, laptop, hand-held computer device, disk, cd, dvd and any mechanical recording or production of any oral material. Goldman Sachs should produce ESI in one of two ways: (1) in its native format (the format in which it was originally maintained); or (2) in electronic load file format per legal industry standards (capturing all metadata and converting all files to TIFF images). If Goldman Sachs produces in native format and if the original format was not a Microsoft Office Suite software program or application, Goldman Sachs should provide a description of the software program or application.

"Letter Agreement" means the agreement dated as of November 6, 2008, among the Tour, TPC Sawgrass and the Debtors, which provided that the Restated Courses Agreement would not become effective until (i) Goldman Sachs consents to the Restated Courses Agreement or (ii) the lending relationship between Goldman Sachs and the Debtors is terminated.

"Loan" has the same meaning Goldman Sachs ascribed to it in the Proofs of Claim.

"Motion" means the Debtors' motion to assume the Restated Courses Agreement and to reject the Letter Agreement (ECF No. 410).

"Original Courses Agreement" means the TPC Courses Agreement dated as of August 14, 1989, among the PGA Tour, Inc. (the "Tour"), Tournament Players Club at Sawgrass, Inc. ("TPC Sawgrass," collectively with the Tour, the "PGA Tour") and the Debtors.

"Person" or "persons" means all natural persons and entities, including without limitation, corporations, companies, partnerships, limited partnerships, joint ventures, trusts, estates, associations, public agencies, departments, bureaus and boards.

"Response" means Goldman Sachs' response to the Motion (ECF No. 424).

"Restated Courses Agreement" means the Amended and Restated TPC Courses Agreement dated as of November 6, 2008, among the Tour, TPC Sawgrass and the Debtors.

"TPC Courses Related Agreements" means (i) the Original Courses Agreement, (ii) the Acknowledgement and Agreement, (iii) the Restated Courses Agreement, (iv) the Letter Agreement and (v) any other letters or agreements related to the aforementioned agreements, including the "Amended Lender Comfort Letter." (Response, page 21).

### Requests

1.    All Documents, ESI and Communications relating to TPC Courses Related Agreements from April 1, 2006 to the present, including without limitations Documents, ESI and Communications relating to Goldman's representations that:

     a.  Goldman Sachs has "continued to negotiate in good faith with the Debtors, and provided the Debtors with a form of lender 'comfort letter' for the TPC to sign, similar to what was executed by the TPC in connection with the Original TPC Agreement." (Response, page 3);

     b.  After March 1, 2010, Goldman Sachs has continued its efforts "to negotiate the terms for the assumption of the Amended TPC Agreement...." (Response, page 3);

     c.  "... the TPC has provided indications [that] it is willing to work in good faith with [Goldman Sachs] to resolve any issues" relating to the TPC Courses Related Agreements. (Response, page 6);

     d.  Goldman Sachs "has never indicated that it would refuse to consent to the Amended TPC Agreement; rather, it has consistently sought standard lender protections (such as the Amended Lender Comfort Letter and the acknowledgement by the Debtors of the continued lien by [Goldman Sachs] on the Amended TPC Agreement), which the Debtors are certainly able to provide, but have refused to negotiate." (Response, page 19); and

e. "The Tour and TPC have not yet secured such consent [to the Amended TPC Agreement] from [Goldman Sachs], although [Goldman Sachs] has had productive discussions with the Tour and the TPC, and anticipates resolving issues with them, including resolution of the Amended Lender Comfort Letter." (Response, page 21).

2.      All Documents, ESI and Communications between and among Goldman Sachs and the PGA Tour and their respective counsel between April 1, 2006 to the present relating to (i) the TPC Courses Related Agreements, (ii) the Loan or (iii) the Debtors.

3.      All Documents, ESI and Communications between Goldman Sachs and any Person (including (i) Sandelman Partners, LP, or any affiliate of Sandelman Partners (collectively, "Sandelman") and (ii) any Person interested in purchasing all or part of Goldman Sachs' interest in the Loan) between April 1, 2006 to the present relating to the TPC Courses Related Agreements.

4.      All Documents, Communications and ESI relating to Goldman Sachs' and/or Sandelman's decision(s) not to consent to the Restated Courses Agreement.

5.      All Documents, Communications and ESI relating to the valuation, in any form, of the Original Courses Agreement or the Restated Courses Agreement (including the valuation of any rights that may have been or will be created under such agreements).

00709464

## Certificate of Service

I certify that a copy of the foregoing has been furnished by facsimile and U.S. mail to John B. Hutton, III, Esq., Greenberg Traurig, P.A., 333 Avenue of the Americas, (333 SE 2nd Ave.), Suite 4400, Miami, FL 33131, this 2nd day of March, 2011.

_____
Attorney

00745495.2

**Exhibit B**

In re:                                     Case No: 3:10-bk-1596
                                           Chapter   11

RQB RESORT, LP, and
RQB DEVELOPMENT, LP,

_____Debtors._____/

## GOLDMAN SACHS MORTGAGE COMPANY'S RESPONSES
## TO DEBTORS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS
### (Motion to Assume TPC Agreement and to Reject Related Agreement)

GOLDMAN SACHS MORTGAGE COMPANY ("**GSMC**") hereby responds to the First

Request for Production of Documents (Motion to Assume TPC Agreement and to Reject Related

Agreement) served by RQB RESORT, LP and RQB DEVELOPMENT, LP (the "**Debtors**") as

follows, and are willing to meet and confer to discuss these objections and responses, should

Debtors' counsel desire to do so.  The responses herein reflect only the present state of GSMC's

knowledge or information regarding the documents that Debtors have requested:

## GENERAL OBJECTIONS

These General Objections shall be, and hereby are, incorporated by reference into each

Specific Objection as though set forth fully therein.  GSMC objects generally to the Request for

Production of Documents (Motion to Assume TPC Agreement and to Reject Related

Agreement), including the Definitions and Instructions and each specific Request (the

"**Requests**"), as follows:

1.      GSMC objects generally to the Requests as premature, because the Court has

entered the Order Establishing Briefing Schedule [D.E. #430] on the Debtors' Motion to Assume

TPC Agreement and to Reject Related Agreement (the "Motion to Assume"), to allow the parties

an opportunity to brief the issues presented by the Motion to Assume "in order to determine whether a final evidentiary hearing on the Motion is necessary." As such, the Court has not yet determined that an evidentiary hearing on the Motion to Assume is necessary, and the Debtors have taken the position that such an evidentiary hearing is not necessary. Accordingly, any discovery relating to the Motion to Assume is premature, unless or until the Court determines that an evidentiary hearing is necessary.

2.     GSMC objects generally to the Requests to the extent they seek information that is protected by various privileges of confidentiality, including the attorney-client privilege, the work-product privilege, the accountant-client privilege, or any other applicable privilege or immunity provided for under Florida, federal or other applicable law. Specific objections on the grounds of privilege are provided for emphasis and clarity only, and the absence of a specific objection should not be interpreted as evidence that GSMC does not object to a specific Request on the basis of an applicable privilege. Additionally, certain of the documents requested may contain trade secrets or otherwise proprietary, private, confidential or commercially sensitive information and, without waiving any objection herein, and only to the extent they are responsive to one or more of the Requests, will be provided by GSMC subject to the Stipulated Protective Order entered by the Court on July 20, 2010.

3.     Any inadvertent disclosure of any privileged information to Debtors shall not be deemed or construed to constitute a waiver of any privilege, any other doctrine against disclosure, or GSMC's right to object to the use of any document inadvertently disclosed. GSMC reserves the right to demand that Debtors return to it any document inadvertently disclosed. GSMC has not waived previously any applicable privilege and specifically states that it does not intend to do so through the production of any documents or information in response to

the Requests. The review and production of documents and information in response to the Requests will be conducted by counsel or paralegals supervised by counsel, and thus any production of privileged documents or information would be inadvertent as to GSMC itself.

4. GSMC objects generally to the Requests to the extent that they are inconsistent with the Stipulated Protective Order dated July 20, 2010.

5. GSMC objects to the Requests to the extent they are vague, ambiguous, overbroad, unduly burdensome, lacking in particularity or seek documents that are neither relevant to the claims or defense to the pending proceedings nor reasonably calculated to lead to the discovery of admissible evidence, as well as to the extent they are unduly burdensome because they impose a significant expense and inconvenience to GSMC.

6. GSMC objects generally to the Requests to the extent that they do not identify a specific time period for which documents are sought.

7. GSMC objects generally to the Requests to the extent that they impose any obligation that is inconsistent with, or greater than that which is required by, the Federal Rules of Bankruptcy Procedure and, as applicable, the Federal Rules of Civil Procedure, or any other applicable rule or law. GSMC will construe and respond to the Requests in accordance with the requirements of Federal and Local Rules and any other applicable rule or law.

8. GSMC objects generally to the production of "all" documents to the extent that the Requests seek to require GSMC to do more than use reasonable diligence to locate responsive and non-privileged and non-objectionable documents based on an examination of those relevant central project or transaction files, or readily accessible files, if any, of core team members in respect of the subject Mortgaged Property. GSMC further objects to the extent that the Requests purport to require production of "all" documents under circumstances in which a

subset of all documents would be sufficient to show the pertinent information, on the grounds that such requests for production of "all" documents are overbroad and unduly burdensome.

9.    GSMC objects generally to the Requests to the extent that they purport to require production of documents that: (i) are publicly available; (ii) are already in the possession, custody or control of Debtors; (iii) are otherwise available from sources to which Debtors have access; or (iv) are obtainable from some other source that is more convenient, less burdensome or less expensive.

10.    GSMC objects generally to the Requests to the extent that they purport to impose upon GSMC a duty to secure and produce documents or things not within its possession, custody or control.  GSMC further objects to the Requests to the extent that they purport to seek discovery of documents that are in the possession, custody or control of GSMC's parents, affiliate or subsidiaries having corporate identities separate and apart from GSMC and therefore not in GSMC's possession, custody or control.

11.    GSMC objects generally to the Requests to the extent that they purport to require GSMC to search for and produce documents, including e-mails and other electronic documents, that are not "accessible" as that term is used in Federal Rule of Civil Procedure 26(b).

12.    GSMC objects to the Requests to the extent that they purport to impose an obligation on GSMC to conduct anything beyond a reasonable and diligent search of readily accessible files (including electronic files) from readily accessible sources (including electronic sources) where responsive documents can reasonably be expected to be found.  Subject to the objections stated, GSMC will search the relevant central project or transaction files or readily accessible files, if any, of core team members in respect of the Mortgaged Property.  Any

Request that seeks to require GSMC to go beyond such a search is overbroad and unduly burdensome.

13.     GSMC objects generally to the Requests to the extent they purport to impose an obligation to preserve and/or produce any documents or information that are newly created or received after the receipt of the Requests because efforts to preserve and/or produce such documents or information would require an undue burden and unreasonable expense.

14.     GSMC objects generally to the Requests to the extent that they purport to require preservation and/or production of ESI that is not stored on active systems, but is stored on systems, backup tapes and other media that are no longer part of normal business operations. Such ESI is not reasonably accessible and likely is duplicative of ESI available from other more readily accessible sources. Because of the lack of relevance of such ESI and the cost associated with searching, preserving and accessing these data sources, GSMC will not search the ESI sources described above.

15.     GSMC objects generally to the Requests to the extent that they purport to require GSMC to create or generate documents that do not exist currently. GSMC's responses and objections shall not be construed as representations of the existence or non-existence of specific documents in its possession, custody or control.

16.     GSMC's responses are based on its current knowledge. Further investigation may reveal additional facts or information that could lead to additions to, changes in, and/or variations from the responses set forth herein. Without in any way obligating itself to do so, GSMC expressly reserves the right to supplement, amend, correct, clarify or modify the responses if and as further information becomes available. GSMC also reserves the right to use or rely on, at any

time, subsequently discovered information or information omitted from these responses and objections as a result of mistake, error, oversight or inadvertence.

17. GSMC objects generally to each of the Requests to the extent that they seek documents that are also sought by other Requests on the grounds that such Requests are unnecessarily cumulative and duplicative. GSMC further objects generally to the Requests to the extent they are interposed for the purposes of delay, annoyance, embarrassment or harassment.

18. GSMC objects generally to the Requests to the extent that they are argumentative, lack foundation or incorporate allegations and assertions that are disputed or erroneous. By responding and objecting to the Requests, GSMC does not admit the correctness of such assertions.

19. A statement that GSMC will produce documents responsive to the Requests means that GSMC will produce responsive documents located within its possession, custody, and control, at the offices of GSMC's counsel or where said documents may be located presently, and at a time mutually convenient for the parties and their respective counsel. Alternatively, at the Debtors' counsel's request, copies of the responsive documents will be provided at the Debtors' sole cost and expense. GSMC's statement that it will produce documents responsive to the Requests does not constitute a representation that responsive documents exist, but only that responsive documents will be produced if they exist, can be located with a reasonable and diligent search of readily accessible files where responsive documents reasonably would be expected to be found, and are not otherwise protected from disclosure. By searching for and/or producing documents responsive to the Requests, GSMC does not concede either that any Request seeks information that is relevant to a claim or defense, or that any Request seeks information that is reasonably calculated to lead to the discovery of admissible evidence. By

searching for and/or producing documents responsive to the Requests, GSMC does not waive in any respect, and expressly reserves, any objections it may have to the use of such materials at trial or otherwise, or objections it may have in the future with regard to further inquiry into the subject matter of the Requests.

20.    These General Objections shall be deemed to be applicable to and continuing with respect to any specific Request for Production of Documents answered below.  The General Objections asserted above are hereby incorporated into each of the answers and responses set forth hereafter.  The General Objections are not waived or limited in any way by any answer provided to any specific numbered Request for Production of Documents.

## OBJECTIONS TO INSTRUCTIONS

1.    GSMC objects to Instruction Number 1 to the extent that the reference to documents in the possession, custody or control of GSMC's "agents, attorneys, accountants, advisors, employees, or any other persons acting on Goldman Sachs' behalf" purports to demand documents subject to the attorney-client privilege, accountant-client privilege or work product doctrine.

2.    GSMC objects to Instruction Number 2 to the extent that it purports to impose the requirement of producing a privilege log more detailed than that which is required under the applicable Federal Rules.

3.    GSMC's objections to instructions shall be deemed to be applicable to and continuing with respect to any specific Request answered below and are hereby incorporated into each of the answers and responses set forth hereafter.  GSMC's objections to instructions are not waived or limited in any way by any answer provided to any specific numbered Request.

MIA 181,793,077v2
Greenberg Traurig, P.A. ■ Attorneys at Law ■ 401 East Las Olas Boulevard ■ Suite 2000 ■ Fort Lauderdale, FL 33301 ■ Tel 954.765.0500 ■ Fax 954.765.1477 ■ www.gtlaw.com

7

## OBJECTIONS TO DEFINITIONS

GSMC objects to the definition of "ESI" to the extent that it purports to require GSMC to produce documents "in its native format" or "in electronic load file format per legal industry standards."

## SPECIFIC OBJECTIONS AND RESPONSES
## TO REQUESTS FOR PRODUCTION

1.      All documents, ESI and Communications relating to TPC Courses Related Agreements from April 1, 2006 to the present, including without limitations Documents, ESI and Communications relating to Goldman's representations that:

a.      Goldman Sachs has "continued to negotiate in good faith with the Debtors, and provided the Debtors with a form of lender 'comfort letter' for the TPC to sign, similar to what was executed by the TPC in connection with the Original TPC Agreement." (Response, page 3);

b.      After March 1, 2010, Goldman Sachs has continued its efforts "to negotiate the terms for the assumption of the Amended TPC Agreement. . ." (Response, page 3);

c.      "... the TPC has provided indications [that] it is willing to work in good faith with [Goldman Sachs] to resolve any issues" relating to the TPC Courses Related Agreements. (Response, page 6);

d.      Goldman Sachs "has never indicated that it would refuse to consent to the Amended TPC Agreement; rather, it has consistently sought standard lender protections (such as the Amended Lender Comfort Letter) and the acknowledgement by the Debtors of the continued lien by [Goldman Sachs] on the Amended TPC Agreement), which the Debtors are certainly able to provide, but have refused to negotiate. (Response, page 19).

e.      "The Tour and TPC have not yet secured such consent [to the Amended TPC Agreement] from [Goldman Sachs], although [Goldman Sachs] has had productive discussions with the Tour and the TPC, and anticipates resolving issues with them, including resolution of the Amended Lender Comfort Letter." (Response, page 21).

> **RESPONSE:**  GSMC incorporates its General Objections, Objections to Instructions and Objections to Definitions by reference.  GSMC objects to this Request on grounds that it is premature.  GSMC also objects to this Request to the extent that it seeks information and documents protected by the attorney-client privilege and work product doctrine by seeking "all Documents, ESI and Communications."  GSMC also objects to this Request to the extent responsive documents can be more easily obtained from the Debtors or Debtors' counsel, who were privy to some of the referenced communications.  GSMC also objects to this Request to the extent it implies that all of the referenced communications were in written or electronic (as opposed to verbal) form.  GSMC further objects to this Request on the grounds that it is overbroad and unduly burdensome in that it seeks information that is not relevant to the Motion to Assume TPC Agreement and to Reject Related Agreement or these proceedings

generally and that is not reasonably calculated to lead to the discovery of admissible evidence.

2.    All Documents, ESI and Communications between and among Goldman Sachs and the PGA Tour and their respective counsel between April 1, 2006 to the present relating to (i) the TPC Courses Related Agreements; (ii) the Loan or (iii) the Debtors.

> **RESPONSE:** GSMC incorporates its General Objections, Objections to Instructions and Objections to Definitions by reference. GSMC objects to this Request on grounds that it is premature. GSMC also objects to this Request to the extent that it seeks information and documents protected by the attorney-client privilege and work product doctrine by seeking "all Documents, ESI and Communications." GSMC also objects to this Request to the extent responsive documents can be more easily obtained from the Debtors or Debtors' counsel, to the extent they were privy to some of the referenced communications. GSMC also objects to this Request to the extent it implies that all of the referenced communications were in written or electronic (as opposed to verbal) form. GSMC further objects to this Request on the grounds that it is overbroad and unduly burdensome in that it seeks information that is not relevant to the Motion to Assume TPC Agreement and to Reject Related Agreement or these proceedings generally and that is not reasonably calculated to lead to the discovery of admissible evidence.

3.    All Documents, ESI and Communications between Goldman Sachs and any Person (including (i) Sandelman Partners, LP, or any affiliate of Sandelman Partners (collectively, "Sandelman") and (ii) any Person interested in purchasing all or part of Goldman Sachs' interest in the Loan) between April 1, 2006 to the present relating to the TPC Course Related Agreements.

> **RESPONSE:** GSMC incorporates its General Objections, Objections to Instructions and Objections to Definitions by reference. GSMC objects to this Request on grounds that it is premature. GSMC also objects to this Request to the extent that it seeks information and documents protected by the attorney-client privilege and work product doctrine by seeking "all Documents, ESI and Communications." GSMC objects to the extent that the Debtors have previously conducted extremely broad discovery of the communications between GSMC and Sandelman, and voluminous documents were previously produced in response to those requests, both by GSMC and by Sandelman. GSMC also objects to this Request to the extent it implies that all of the referenced communications were in written or electronic (as opposed to verbal) form. GSMC further objects to this Request on the grounds that it is overbroad and unduly burdensome in that it seeks information that is not relevant to the Motion to Assume TPC

Agreement and to Reject Related Agreement or these proceedings generally and that is not reasonably calculated to lead to the discovery of admissible evidence.

4. All Documents, Communications and ESI relating to Goldman Sachs' and/or Sandelman's decision(s) not to consent to the Restated Courses Agreement.

> **RESPONSE:** GSMC incorporates its General Objections, Objections to Instructions and Objections to Definitions by reference. GSMC objects to this Request on grounds that it is premature. GSMC also objects to this Request to the extent that it seeks information and documents protected by the attorney-client privilege and work product doctrine by seeking "all Documents, ESI and Communications." GSMC also objects because the Request is misleading in implying that the Debtors presented the final form of the Restated Courses Agreement to GSMC for review and approval. GSMC objects to the extent that the Debtors have previously conducted extremely broad discovery of the communications between GSMC and Sandelman, and voluminous documents were previously produced in response to those requests, both by GSMC and by Sandelman. GSMC also objects to this Request to the extent it implies that all of the referenced communications were in written or electronic (as opposed to verbal) form.

5. All Documents, Communications and ESI relating to the valuation, in any form, of the Original Courses Agreement or the Restated Courses Agreement (including the valuation of any rights that may have been or will be created under such agreements).

> **RESPONSE:** GSMC incorporates its General Objections, Objections to Instructions and Objections to Definitions by reference. GSMC objects to this Request on grounds that it is premature. GSMC also objects to this Request to the extent that it seeks information and documents protected by the attorney-client privilege and work product doctrine by seeking "all Documents, ESI and Communications." GSMC objects to the extent that the Debtors have previously conducted extremely broad discovery of the values that GSMC has ascribed to its loan and its collateral, of which Original Courses Agreement and the Restated Courses Agreement are components, and voluminous documents were previously produced in response to those requests. GSMC also objects to this Request to the extent it implies that all of the referenced communications were in written or electronic (as opposed to verbal) form.

Respectfully submitted this 1st day of April, 2010.

*GREENBERG TRAURIG, P.A.*
*Counsel for Goldman Sachs Mortgage Company*
333 Avenue of the Americas, Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717

By: _____
        JOHN B. HUTTON
        Florida Bar No. 902160
        huttonj@gtlaw.com
        SCOTT M. GROSSMAN
        Florida Bar No. 0176702
        grossmansm@gtlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 1st, 2010, a true and correct copy of the Responses to the First Request for Production of Documents to Goldman Sachs Mortgage Company (Motion to Value) was served via electronic mail and U.S. Mail upon Cynthia Jackson, Esq., as counsel for the Debtors.

_____
SCOTT M. GROSSMAN