# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 3:10-bk-01596 |
| RQB Resort, LP and RQB Development, LP,[1] | ) | Chapter 11 |
| | ) | Jointly Administered |
| Debtors. | ) | |

## DEBTORS' THIRD MOTION TO
## EXTEND EXCLUSIVITY PERIODS

RQB Resort, LP and RQB Development, LP (collectively, the "Debtors"), move the Court pursuant to Section 1121 of the Bankruptcy Code for entry of an order (i) extending the period during which the Debtors have the exclusive right to file a Chapter 11 plan until September 1, 2011, and (ii) extending the period during which the Debtors have the exclusive right to solicit acceptances until November 1, 2011 (the "Motion"). In support of the Motion, the Debtors state:

1.    On March 16, 2011, the Debtors filed their second motion to extend the exclusivity period until the Debtors had certainty regarding the (i) the value of Goldman Sachs' secured claim and (ii) the status of the Restated Courses Agreement (the "Second Exclusivity Motion"; ECF No. 436).

2.    On March 30, 2011, the Court entered an order granting in part the Debtors' Second Exclusivity Motion (the "Second Exclusivity Order"; ECF No. 454). Pursuant to the Second Exclusivity Order, the Debtors have the exclusive

---

[1] RQB Resort, LP's tax identification number is 86-1161952. RQB Development, LP's tax identification number is 13-4322680. The principal address of each debtor is 1000 PGA Tour Boulevard, Ponte Vedra Beach, FL 32082.

right to file a plan of reorganization until June 7, 2011, and until August 6, 2011 to solicit acceptances to any such plan.

3.    Pursuant to Section 1121(d) of the Bankruptcy Code, the Court has the authority to extend the exclusive period during which the Debtors must file a plan for up to eighteen months after the Petition Date (until September 1, 2011) and the exclusive period to solicit acceptances to such plan for up to twenty months after the Petition Date (until November 1, 2011).

4.    The Second Exclusivity Order stated that it was "without prejudice to the Debtors filing a future Motion to Extend Exclusivity Periods," presumably to provide the Debtors with a chance to seek additional time to file a plan of reorganization in the event the Debtors did not have certainty regarding the status of the Restated Courses Agreement as they approached the June 7, 2011 deadline.[2]

5.    When the Restated Courses Agreement becomes effective, it will add substantial value to the Debtors' estates by, among other matters, (i) providing the Debtors with the right to sell 450 golf memberships in the Tournament Players' Club, Inc. (collectively, the "TPC Memberships") and (ii) permitting the Debtors to charge the resort's guests a variable market rate to play golf at the TPC courses rather than the lower fixed rate the Debtors were allowed to charge under the Original Courses Agreement (the "Upcharge Income").

---

[2] The Restated Courses Agreement, which is dated November 6, 2008, amends and restates an agreement among the Debtors, the PGA Tour, Inc. (the "Tour") and the Tournament Players Club at Sawgrass, Inc. (the "Club"). Pursuant to the Debtors' November 6, 2008, side agreement with the Tour and the Club (the "Letter Agreement")--which must be read with the Restated Courses Agreement based upon this Court's determination that the Restated Courses Agreement and the Letter Agreement are inseparable--the Restated Courses Agreement will not become effective until Goldman Sachs consents to the Restated Courses Agreement.

6.     The Restated Courses Agreement will allow the Debtors to generate approximately $700,000 per year in Upcharge Income (as acknowledged by Goldman Sachs) and the TPC Memberships will have a present value of between $9.8 and $22.5 million (also as acknowledged by Goldman Sachs).

7.     Despite the fact that the Restated Courses Agreement will add substantial value to the Debtors' estates, Goldman Sachs continues to refuse to consent to the Restated Courses Agreement.

8.     As the Debtors have informed the Court and their creditors, the Debtors' plan of reorganization is predicated on the Debtors reaching an agreement with an investor that will provide the Debtors with new capital.

9.     The Debtors have identified several investors that are interested in providing new capital to the Debtors to fund their reorganization. These investors are not, however, willing to invest substantial capital in the Resort (with its $132 million valuation) or to incur the costs of extensive due diligence unless they are certain the Debtors actually own all of the assets considered in the Court's $132 million valuation of Goldman Sachs' secured claim–including the TPC Memberships and the Upcharge Income. Potential investors are simply unwilling to incur due diligence costs or to invest in a $132 million resort without some assurance that they will have the underlying assets in return.[3]

---

[3]  A number of investors have also expressed a concern that they may be forced to pay Goldman Sachs additional monies to obtain its consent to the Restated Courses Agreement thereby further increasing the amount of monies needed to obtain the assets of the Debtors.

10.     The Debtors have used their best efforts to achieve certainty with respect to the Restated Courses Agreement and to resolve the inconsistency between (i) the $132 million value of Goldman Sachs' secured claim (which includes the value of the TPC Memberships and the Upcharge Income) and (ii) the assets that the Debtors actually own (which do not include the TPC Memberships or the Upcharge Income). These efforts include requesting Goldman Sachs to consent to the Restated Courses Agreement before the Petition Date and filing the motions described below.

11.     On January 20, 2011, the Debtors filed a motion for reconsideration of the Court's order valuing the secured claim of Goldman Sachs (the "Motion for Reconsideration"; ECF No. 379). The Motion for Reconsideration was based on Anne Lloyd Jones' reliance on an undisclosed extraordinary assumption that the Tour will enter into an agreement with a new investor that is substantially similar to the Restated Courses Agreement. The Court denied the Motion for Reconsideration.[4]

12.     On February 11, 2011, the Debtors filed a motion seeking authority to assume the Restated Courses Agreement and reject the Letter Agreement so that the Restated Courses Agreement could become effective without Goldman Sachs' consent (the "Motion to Assume and Reject"; ECF No. 410).

---

[4] Based upon the Debtors' discussions with investors who are interested the resort, investors are not willing to *assume* (i) that the Tour will enter into a similar agreement or (ii) that Goldman Sachs will consent to such agreement. Further, based upon the Debtors' discussions with the Tour, the Tour is no longer willing to enter into a similar agreement unless the Debtors provide the Tour with significant concessions that will dilute the value of the Restated Courses Agreement.

13.     On April 22, 2011, the Court denied the Motion to Assume and Reject from the Bench, finding that the Letter Agreement and Restated Courses Agreement must be assumed or rejected together.

14.     At the conclusion of the April 22 hearing, counsel for the Debtors informed the Court that its ruling left the Debtors with continued uncertainty regarding whether the TPC Memberships and the Upcharge Income promised in the Restated Courses Agreement are assets of the estates upon which an investor may rely. The Court acknowledged that uncertainty and offered to hear any matter which requires the Court's immediate attention on an expedited basis.

15.     On April 29, 2011, the Debtors again requested that Goldman Sachs consent to the Restated Courses Agreement, this time by offering Goldman Sachs a first lien security interest in the Restated Courses Agreement as consideration for doing so. The Debtors' request is attached as Exhibit A.

16.     On May 6, 2011, Goldman Sachs again refused to consent to the Restated Courses Agreement, absent the Debtors' satisfaction of conditions knowingly outside of the Debtors' control. These conditions include (i) consent to the Restated Courses Agreement by Sandelman Partners, LP, a participant in Goldman Sachs' loan to the Debtors, (ii) the execution by the Tour and Club of an updated acknowledgement and agreement and (iii) the execution by the Tour and Club of a memorandum to be recorded in the St. Johns County public records reflecting Goldman Sachs' security interest in the Restated Courses Agreement. A copy of Goldman Sachs' response to the Debtors' request is attached as Exhibit B

17.     The Debtors have no power to deliver on these purported conditions (a fact well known to Goldman Sachs).

18.     A copy of the most recent correspondence between the Debtors and Goldman Sachs is attached as Exhibit C.

19.     Goldman Sachs is withholding its consent for the ulterior purpose of frustrating the Debtors' ability to reorganize.  Goldman Sachs is aware that the Debtors will be unable to secure an investor willing to invest in the Resort (with a $132 million valuation) without certainty regarding the availability of the assets and value inherent in the Restated Courses Agreement.   Goldman Sachs' withholding its consent under these circumstances for a capricious purpose is contrary to Goldman Sachs' own financial interests and is in bad faith.

20.     Because of the continuing uncertainty regarding the Restated Courses Agreement, the Debtors request that the Court extend the period during which the Debtors have the exclusive right to file a plan of reorganization.  The extension will (i) provide the Debtors with an opportunity to negotiate a resolution of these issues with Goldman Sachs before a Court-appointed mediator[5], and the mediation is successful, provide time for potential investors to complete their due diligence knowing that the TPC Memberships and Upcharge Income are assets of the Debtors' estates or, alternatively, (ii) provide time for investors to complete due diligence based on the Resort's $132 million valuation  with the continuing

---

[5]   By order dated March 4, 2011, the Court has directed the Debtors and Goldman Sachs to mediation which conceivably may result in a resolution regarding Goldman Sachs' refusal to consent  to the Restated Courses Agreement.

uncertainty as to the assets that will be owned by the reorganized Debtors once that investment is made.

## Legal Authority

The Court should find that cause exists for extending the Exclusivity Periods based on Goldman Sachs' refusal to consent to the Restated Courses Agreement in spite of the value it will add to Goldman Sachs' collateral. By doing so, Goldman Sachs is knowingly frustrating the Debtors' reorganization by perpetuating the uncertainty related to the Restated Courses Agreement until the expiration of the Exclusivity Periods. Such conduct is contrary to law and the spirit of the Bankruptcy Code. *See Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1291 (11th Cir. 2001) ("[O]ne party cannot capriciously exercise discretion accorded it under a contract so as to thwart the contracting parties' reasonable expectations.") (applying Florida law). Goldman Sachs should not be rewarded for its manipulative conduct. *See also Burger King Corp. v. Weaver*, 169 F.3d 1310, 1315 (11th Cir. 1999) ("[A] party's good-faith cooperation is an implied condition precedent to performance of a contract; where the cooperation is unreasonably withheld, the recalcitrant party is estopped from availing himself of his own wrong doing.").

21. Pursuant to Section 1121(d) of the Bankruptcy Code, a bankruptcy court may extend the exclusivity periods for cause for a period not to exceed 18 months after the Petition Date (which would be September 1, 2011). The decision to extend the exclusivity periods is within the discretion of the Bankruptcy Court

and is based upon the facts and circumstances of each case. *See e.g. In re Adelphia Communications Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006).

22.     Among the factors typically considered by courts in finding cause to extend the exclusivity periods are the following:

1.      The size and complexity of the case;

2.      The necessity of sufficient time to negotiate and prepare adequate information;

3.      The existence of good faith progress toward reorganization;

4.      Whether the debtor is paying its debts as they become due;

5.      Whether the debtor has demonstrated reasonable prospects for filing a viable plan;

6.      Whether the debtor has made progress negotiating with creditors;

7.      The length of time the case has been pending;

8.      Whether the debtor is seeking an extension to pressure creditors; and

9.      Whether unresolved contingencies exist.

*See, e.g. In re Friedman's, Inc.*, 336 B.R. 884, 888 (Bankr. S.D. Ga. 2005); *In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987).

A bankruptcy court need not apply all of these factors in determining whether cause exists to extend exclusivity but should determine what factors it thinks are relevant to the case at hand:

> The bankruptcy court decides which factors are relevant to a particular case and how much weight to give each factor. Notwithstanding the frequently-cited nine-factor test, the court has "a high degree of flexibility" in designing the appropriate test for each case and "is not required to apply any particular set of factors, or number of factors, in every case."
>
> *In re Sportsman's Link, Inc.*, 2007 WL 7023830, at *2 (Bankr. S.D. Ga. Dec. 3, 2007); citing to *In re Hoffinger Indus., Inc.*, 292 B.R. 639, 644 (B.A.P., 8th Cir. 2003), *In re Service Merchandise Co.*, 256 B.R. 744, 751 (Bankr. M.D. Tenn. 2000) and *In re Elder-Beerman Stores Corp.*, 1997 WL 1774880, at *4 (S.D. Ohio June 23, 1997).

In *Sportsman's Link* the Court held that the size and complexity of the case was not relevant (the case was neither large or complex) and instead focused on an unresolved contingency--the issue of whether Sportsman's Link had timely assumed a lease:

> Here, the single most important factor in determining cause to extend the exclusivity period is the issue that has dominated this case from the beginning: the unresolved contingency (the final factor of the nine-factor list) of whether Sportsman's Link has timely assumed the Lease. Not only is this issue still "live," its resolution is not imminent. Debtor's pending Motion to Assume Lease cannot be ruled upon [for 20 days] . . .

> The Lease issue is dispositive of the Motion presently
> before me [to extend exclusivity] for two reasons. First,
> the question of whether Sportsman's Link should be
> allowed to assume the Lease is central to the Debtor's
> survival as a going concern. Second, Sportsman's Link
> cannot reasonably be expected to put forth a plan of
> reorganization until the Lease issue has been resolved. I
> conclude that the critical role of the Lease in the
> Debtor's reorganization and the fact that this case cannot
> move forward until the assumption issue is determined
> are sufficient to establish cause under § 1121(d).

> *Sportsman's Link*, 2007 WL
> 7023830, *3.

Here, unlike *Sportsman's Link*, the Court has already determined that "this case is a case of significant size and complexity". Transcript from June 21 hearing, pg. 131, lines 10-12. And, as was the case in *Sportsman's Link,* there exists in these cases critical unresolved issues and contingencies–including the Debtors' prospective rights in the Restated Courses Agreement–the resolution of which is essential to the Debtors' ability to move forward and confirm a plan. Accordingly, just as in *Sportsman's Link,* sufficient cause exists to extend the Exclusivity Periods.

WHEREFORE, the Debtors request that the Court enter an order extending the exclusive period during which the Debtors must file a plan until September 1, 2011, and extending the Debtors' exclusive period to solicit acceptances until November 1, 2011.

Dated: May 16, 2011.

SMITH HULSEY & BUSEY

By: _/s/ Cynthia C. Jackson_
      Stephen D. Busey
      Cynthia C. Jackson

Florida Bar Number 498882
225 Water Street, Suite 1800
Jacksonville, Florida 32202
(904) 359-7700
(904) 359-7708 (facsimile)
cjackson@smithhulsey.com

Counsel for the Debtors

00754193.8

Exhibit A

# Cynthia C. Jackson

| | |
|---|---|
| **From:** | Cynthia C. Jackson |
| **Sent:** | Friday, April 29, 2011 3:28 PM |
| **To:** | 'HuttonJ@gtlaw.com'; GilbertJ@GTLAW.com; grossmansm@gtlaw.com; sorianor@gtlaw.com; Steven.Koch@haynesboone.com |
| **Cc:** | Stephen D. Busey; John R. Smith, Jr. |
| **Subject:** | RE: RQB; Amended and Restated TPC Courses Agreement |
| **Attachments:** | 3056_001.pdf; 3057_001.pdf; 3058_001.pdf; 3059_001.pdf; 3055_001.pdf |

John –

RQB requests that Goldman Sachs consent to the Restated Courses Agreement. As consideration for Goldman Sachs' consent, RQB will grant Goldman Sachs a security interest in the Restated Courses Agreement.

In response to Goldman Sachs' inquiry about the cost/benefit analysis, the Restated Courses Agreement will provide the resort with (i) $700,000+ of annual upcharge income, (ii) 450 TPC golf memberships to enhance the value of the resort's excess land (according to Goldman Sachs's internal analysis, these memberships have a value ranging from $9,714,600 to $12,847,500), and (iii) a twenty year commitment by the PGA Tour to host THE PLAYERS Championship at the Stadium Course, which will result in additional high income group bookings. These benefits are significantly more valuable to the resort than the less than $100,000 in lost golf revenues each year resulting from the Stadium Course's closure for two additional weeks leading into THE PLAYERS Championship. In addition, the extended closure benefits RQB by enhancing the stature of the Stadium Course, which will in turn, results in additional bookings at the hotel.

In response to your request for concessions from the PGA Tour, RQB is unable to cause the PGA Tour to (i) delete the transfer fee payable under Article X of the agreement (which, in any event, was in the Original Courses Agreement that Goldman Sachs approved at the time of the loan closing), (ii) execute and record a memorandum of the Restated Courses Agreement in St. Johns County's public records, or (iii) execute and deliver an updated acknowledgement letter.

As to Goldman Sachs' review of any other agreements between RQB and the PGA Tour/TPC Sawgrass, all such agreements are attached.

As to the "diligence side," RQB is unable to (i) change the terms of the St. Johns County Ordinance limiting the number of condos that can be built or (ii) modify the rights granted (a) to the TPC to use the Cabana Club and (b) the Lodge at Ponte Vedra to use certain marks, which rights were granted in the Original Courses Agreement (and therefore have not been amended by the Restated Courses Agreement).

Based upon RQB's upcoming deadline to file a plan of reorganization, time is of the essence. Please let us know by the close of business on May 4, 2011 whether Goldman Sachs will provide its consent to the Restated Courses Agreement.

*Cynthia C. Jackson*
*Smith Hulsey & Busey*
*Suite 1800*
*225 Water Street*
*Jacksonville FL*
*32202*
*904.359.7731*

---

**From:** <HuttonJ@gtlaw.com>
**Date:** August 29, 2010 5:13:32 PM EDT
**To:** <SBusey@smithhulsey.com>, <cjackson@smithhulsey.com>, <jsmith@smithhulsey.com>
**Cc:** <GilbertJ@GTLAW.com>, <grossmansm@gtlaw.com>, <sorianor@gtlaw.com>, <Steven.Koch@haynesboone.com>, <John.Dart@arlaw.com>
**Subject: RQB; Amended and Restated TPC Courses Agreement**

Steve/Cyndi/Jay, GSMC has reviewed the Amended and Restated TPC Courses Agreement, and, subject to receipt of consent from our participant, Sandelman, is prepared to provide consent, if the debtor does/provides the following things:

* receipt of a cost/benefit analysis acceptable to Goldman Sachs Mortgage Company, comparing the existing 1989 TPC Courses Agreement to the Amended Agreement, including, (x) additional costs/losses incurred under the Amended Agreement, specifically lost property revenue caused by the expanded closure of the Player's Stadium and Dye's Valley courses relating to the The Players Championship and (y) the value attributed to the membership interests in TPC Sawgrass to be granted to loan borrower

* acknowledgement regarding the Amended Agreement from the loan borrower and guarantors generally in form previously provided, covering (x) the pledge of the Amended Agreement as loan collateral (and including as loan collateral any memberships currently held by loan borrower and requiring payment of all funds due to loan borrower under the Amended Agreement to lender) and (y) certain restrictions relating to the transfer of the membership interests in TPC Sawgrass controlled by loan borrower

* modification of the Amended Agreement to delete the "Fee" payable under Article X of the Amended Agreement upon a transfer of the Marriott Sawgrass

* execution by the PGA Tour and TPC Sawgrass of the form of Acknowledgment and Agreement previously provided, with the changes previously requested on behalf of Goldman Sachs Mortgage Company

* review and approval by Goldman Sachs Mortgage Company of any other agreements in effect between loan borrower and the PGA Tour/TPC Sawgrass

* confirmation of recording of a memo of the TPC Courses Agreement against the TPC property, which memo is not subordinate to any mortgage on the TPC property

* on the diligence side, confirmation from lender that lender is satisfied with:

· the limitation on condos that can be built pursuant to the applicable ordinance (referenced in section 1.7 of the TPC Courses Agreement)

· the agreements granting rights of TPC to use the Cabana Club (referenced in section 9.5 of the TPC Courses Agreement)

· the rights granted to the Lodge at Ponte Verde relating to use of certain marks (referenced in section 11.1(a) of the TPC Courses Agreement)

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. To reply to our email administrator directly, please send an email to postmaster@gtlaw.com.

Exhibit B

| | |
|---|---|
| **From:** | Cynthia C. Jackson |
| **Sent:** | Monday, May 16, 2011 5:25 PM |
| **To:** | Cynthia C. Jackson; Tana L. Copeland |
| **Subject:** | FW: sawgrass modification of mortgage (129313_2).DOC, sawgrass letter on PGA tour agreement(129255_5).DOC |
| **Attachments:** | sawgrass modification of mortgage (129313_2).DOC; sawgrass letter on PGA tour agreement(129255_5).DOC |

---

**From:** HuttonJ@gtlaw.com [mailto:HuttonJ@gtlaw.com]
**Sent:** Friday, May 06, 2011 12:21 PM
**To:** Cynthia C. Jackson; Stephen D. Busey; John R. Smith, Jr.
**Cc:** Steven.Koch@haynesboone.com; brutonb@gtlaw.com; GilbertJ@GTLAW.com; grossmansm@gtlaw.com; sorianor@gtlaw.com
**Subject:** RQB: sawgrass modification of mortgage (129313_2).DOC, sawgrass letter on PGA tour agreement(129255_5).DOC

<<sawgrass modification of mortgage (129313_2).DOC>>
<<sawgrass letter on PGA tour agreement(129255_5).DOC>>
Cyndi, GSMC has reviewed the Amended and Restated TPC Courses Agreement, and, subject to receipt of consent from its participant, Sandelman, is prepared to provide consent, upon satisfaction of the following conditions:

1. Debtors and guarantors sign the attached form of letter agreement, regarding GSMC's lien on the Amended and Restated TPC Courses Agreement.

2. Debtors sign the attached form of mortgage modification, regarding GSMC's lien on the Amended and Restated TPC Courses Agreement.

3. Execution by the PGA Tour and TPC Sawgrass of the form of Acknowledgement and Agreement previously provided, with the changes previously requested on behalf of GSMC.

4. Confirmation of recording of a memo of the TPC Courses Agreement against the TPC property, which memo is not subordinate to any mortgage on the TPC property. We plan to send you a proposed form for this, similar in form to the memo that was recorded in 2000.

---------------------------------------------------------------------

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. To reply to our email administrator directly, please send an email to mailto:postmaster@gtlaw.com.

---------------------------------------------------------------------

http://www.gtlaw.com/

---

**Total Control Panel**                                                    Login

To: cjackson@smithhulsey.com          Remove this sender from my allow list
From: huttonj@gtlaw.com

*You received this message because the sender is on your allow list.*

=

Exhibit C

| | |
|---|---|
| **From:** | Cynthia C. Jackson |
| **Sent:** | Saturday, May 07, 2011 3:29 PM |
| **To:** | 'HuttonJ@gtlaw.com' |
| **Cc:** | grossmansm@gtlaw.com; GilbertJ@GTLAW.com; Steven.Koch@haynesboone.com; Stephen D. Busey |
| **Subject:** | FW: sawgrass modification of mortgage (129313_2).DOC, sawgrass letter on PGA tour agreement(129255_5).DOC |

John-

Subject to David O'Halloran's review and approval, RQB is prepared to execute and deliver the documents requested in items 1 and 2 of your email on the terms reflected in the attached redline drafts.

As to items 3 and 4--documents Goldman Sachs wants PGA Tour to execute and deliver--RQB has no ability to cause PGA Tour to do so.

RQB has done everything in its power to obtain Goldman's consent. Because of the June 7 deadline to file a plan it is critical that RQB know whether the Restated Courses Agreement is effective as soon as possible. If Goldman Sachs does not provide RQB with its written consent to the Restated Courses Agreement by 5:00 p.m. on Monday May 9, 2011, RQB will seek relief from the Bankruptcy Court.

---

**From:** HuttonJ@gtlaw.com [mailto:HuttonJ@gtlaw.com]
**Sent:** Friday, May 06, 2011 12:21 PM
**To:** Cynthia C. Jackson; Stephen D. Busey; John R. Smith, Jr.
**Cc:** Steven.Koch@haynesboone.com; brutonb@gtlaw.com; GilbertJ@GTLAW.com; grossmansm@gtlaw.com; sorianor@gtlaw.com
**Subject:** RQB: sawgrass modification of mortgage (129313_2).DOC, sawgrass letter on PGA tour agreement(129255_5).DOC

<<sawgrass modification of mortgage (129313_2).DOC>>
<<sawgrass letter on PGA tour agreement(129255_5).DOC>>
Cyndi, GSMC has reviewed the Amended and Restated TPC Courses Agreement, and, subject to receipt of consent from its participant, Sandelman, is prepared to provide consent, upon satisfaction of the following conditions:

1. Debtors and guarantors sign the attached form of letter agreement, regarding GSMC's lien on the Amended and Restated TPC Courses Agreement.

2. Debtors sign the attached form of mortgage modification, regarding GSMC's lien on the Amended and Restated TPC Courses Agreement.

3. Execution by the PGA Tour and TPC Sawgrass of the form of
Acknowledgement and Agreement previously provided, with the changes
previously requested on behalf of GSMC.


4. Confirmation of recording of a memo of the TPC Courses Agreement
against the TPC property, which memo is not subordinate to any mortgage
on the TPC property. We plan to send you a proposed form for this,
similar in form to the memo that was recorded in 2000.

-------------------------------------------------------------------------
   Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we
inform you that any U.S. federal tax advice contained in this communication (including any attachments),
unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose
of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to
another party any matters addressed herein.

   The information contained in this transmission may contain privileged and confidential information. It is
intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby
notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited.
If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the
original message. To reply to our email administrator directly, please send an email to
mailto:postmaster@gtlaw.com.


-------------------------------------------------------------------------


http://www.gtlaw.com/

---

**Total Control Panel**                                                        Login

To: cjackson@smithhulsey.com          Remove this sender from my allow list
From: huttonj@gtlaw.com

*You received this message because the sender is on your allow list.*

| | |
|---|---|
| **From:** | HuttonJ@gtlaw.com |
| **Sent:** | Monday, May 09, 2011 5:11 PM |
| **To:** | Cynthia C. Jackson; Stephen D. Busey |
| **Cc:** | GilbertJ@GTLAW.com; grossmansm@gtlaw.com; sorianor@gtlaw.com; Steven.Koch@haynesboone.com; brutonb@gtlaw.com |
| **Subject:** | Sawgrass - PGA agreement - side letter and mortgage modification |
| **Attachments:** | DVComparison_#129255v5_NYC_ - sawgrass letter on PGA tour agreement-#129255v6 _NYC_ - sawgrass letter on PGA tour agreement.doc; DVComparison_#129313v2_NYC_ - modification of mortgage - sawgrass-#129313v3_NYC_ - modification of mortgage - sawgrass.doc; sawgrass modification of mortgage (129313_3).DOC; sawgrass letter on PGA tour agreement(129255_6).DOC |

Cyndi, GSMC has reviewed the Amended and Restated TPC Courses Agreement, and, subject to receipt of consent from its participant, Sandelman, is prepared to provide consent, upon satisfaction of the following conditions:

1. Debtors and guarantors sign the attached form of letter agreement, regarding GSMC's lien on the Amended and Restated TPC Courses Agreement. The letter agreement has been revised to incorporate some of the changes requested by the Debtors. The other changes were not acceptable to GSMC.

2. Debtors sign the attached form of mortgage modification, regarding GSMC's lien on the Amended and Restated TPC Courses Agreement. The mortgage modification has been revised to incorporate some of the changes requested by the Debtors. The other changes were not acceptable to GSMC.

3. Execution by the PGA Tour and TPC Sawgrass of the form of Acknowledgement and Agreement previously provided, with the changes previously requested on behalf of GSMC.

4. Confirmation of recording of a memo of the TPC Courses Agreement against the TPC property, which memo is not subordinate to any mortgage on the TPC property. We sent you a proposed form for this, similar in form to the memo that was recorded in 2000, but have not received any comments back on this form. Please advise, thanks.

**John B. Hutton**
Shareholder
Greenberg Traurig, P.A. | 333 Avenue of the Americas (333 S.E. 2nd Avenue) | Miami, FL 33131
Tel 305-579-0788 | Fax 305.961.5788
huttonj@gtlaw.com | www.gtlaw.com



**USA LAW FIRM OF THE YEAR, CHAMBERS GLOBAL AWARDS 2007**
ALBANY · AMSTERDAM · ATLANTA · AUSTIN · BOSTON · CHICAGO · DALLAS · DELAWARE · DENVER · FORT LAUDERDALE · HOUSTON · LAS VEGAS · LONDON*
· LOS ANGELES · MIAMI · NEW JERSEY · NEW YORK · ORANGE COUNTY · ORLANDO · PALM BEACH COUNTY · PHILADELPHIA · PHOENIX · SACRAMENTO · SAN
FRANCISCO · SHANGHAI · SILICON VALLEY · TALLAHASSEE · TAMPA · TYSONS CORNER · WASHINGTON, D.C. · WHITE PLAINS
*OPERATES AS GREENBERG TRAURIG MAHER LLP
**STRATEGIC ALLIANCES WITH INDEPENDENT LAW FIRMS**
MILAN · ROME

Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise