UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:

RQB RESORT, LP and
RQB DEVELOPMENT, LP,

       Debtors.
_____/

Case No.: 3:10-bk-01596-PMG

Chapter 11

Jointly Administered

**OBJECTION OF ELLEN PAN, M.D., TO CONFIRMATION OF
DEBTORS' SECOND AMENDED JOINT PLAN OF REORGANIZATION**

Ellen Pan, M.D. ("Dr. Pan"), a creditor of RQB Resort, LP, aka Sawgrass Resort Marriott and Cabana Club, and RQB Development, LP (the "Debtors"), by and through her undersigned counsel, hereby objects to confirmation of the Debtors' Second Amended Joint Chapter 11 Plan of Reorganization (the "Plan") and states in support thereof:

### I. Jurisdiction and Venue

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

### II. Factual Background

*A.    The Bankruptcy Case*

3.    On March 1, 2010 (the "Petition Date"), the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

4.    The Debtors have remained in possession of their properties pursuant to 11 U.S.C. §§ 1107 and 1108 as debtors-in-possession.

5.    On September 20, 2011, the Debtor filed the Plan [Doc. No. 537].

6. On August 4, 2010, Dr. Pan filed a Motion for Relief from the Automatic Stay (the "Stay Motion") [Doc. No. 232] in order to proceed with her personal injury lawsuit currently pending in the Circuit Court in and for St. Johns County, Florida (the "State Court") in the case styled as *Ellen Pan, M.D. v. RQB Resort, L.P., aka Sawgrass Marriott Golf Resort & Cabana Club, et al.*, Case No. CA10-299, Division 55 (the "State Court Action"). The Debtors are some of the defendants in the State Court Action.

7. On September 28, 2010, the Court entered an Order granting the Stay Motion (the "Order Granting Stay Relief"), and lifted the automatic stay to allow Dr. Pan to proceed against the Debtor and other defendants in the State Court Action and to take any necessary appeals arising out of the State Court Action and for the purpose of seeking recovery from any insurer provided coverage for claims raised or to be raised in the State Court Action [Doc. No. 62].

8. On September 8, 2010, Dr. Pan filed an unsecured claim in this case in the amount of $2,500,000.00, claim register number 86, for damages arising from her claims in the State Court Action.

B.  *The State Court Action*

9. Following entry of the Order Granting Stay Relief, Dr. Pan proceeded to issue discovery to the defendants in the State Court Action, including the Debtors (the "State Court Defendants"), including interrogatories (the "Interrogatories") and requests for production (the "Requests").

10. The Interrogatories and Requests seek, *inter alia*, information regarding insurance policies held by the Debtors and related insurance coverage.

11. On April 6, 2011, the State Court Defendants responded briefly to the Interrogatories but (1) did not provide any responses of substance, (2) did not swear under oath

that the answers to the Interrogatories were true and correct and (3) did not sign the answers to the Interrogatories.

12. Similarly, the State Court Defendants failed to produce any documents of substance in response to the Requests.

13. On April 12, 2011, counsel for Dr. Pan in the State Court action sent a letter (the "April 12th Letter") to the State Court Defendants attempting to resolve by agreement issues related to the Interrogatories and Requests.

14. In response to the April 12th Letter, the State Court Defendants produced supplemental responses to the Requests. These supplemental responses also provided no useful information to Dr. Pan, and had redacted all substantive information.

15. On September 30, 2011, counsel for Dr. Pan in the State Court action sent a second letter (the "September 30th Letter") to the State Court Defendants, again attempting to resolve the ongoing discovery disputes.

16. On October 6, 2011, the State Court Defendants produced minimal supplement responses with no information useful to Dr. Pan.

17. As of the date of this Objection, Dr. Pan has received no significant cooperation from the State Court Defendants, and has been unable to meaningfully pursue her claims in the State Court Action.

18. The State Court Defendants have consistently delayed the course of the State Court Action.

## III. LEGAL ANALYSIS

*A.   The Plan includes inappropriate releases.*

19. Article X of the Plan contains extremely broad releases for both the Debtors and for non-Debtor persons (the "Proposed Release") and an extremely broad discharge provision (the "Discharge Provisions").

20. Dr. Pan objects to the Proposed Release and Discharge Provisions.

21. Whether bankruptcy courts have the power to issue injunctions or grant third party releases discharging the liability of non-debtors centers primarily around conflicting interpretations of Sections 105(a) and 524(e). Section 524(e) provides that, "except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524. Section 105(a) grants a court broad equitable power "to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105.

22. Courts that do not permit non-debtor releases conclude that section 524(e) directly conflicts with any interpretation of Section 105(a) that would permit non-debtor releases. *In re Lowenschuss*, 67 F.3d 1394 (9th Cir. 1995); *In re Zale Corp.*, 62 F.3d 746 (5th Cir. 1995); *In re Western Real Estate Fund, Inc.*, 922 F.2d 592 (10th Cir. 1990).

23. Courts that do permit non-debtor releases hold that Section 524 does not expressly bar a plan from providing non-debtor releases, but simply provides that, if the plan does not otherwise specify such a release, the discharge arising under Section 1141 does not affect a creditor's claim against a non-debtor. *See In re Transit Group, Inc.*, 286 B.R. 811 (Bankr. M.D.Fla. 2002); *In re Optical Technologies, Inc.*, 216 B.R. 989 (Bankr. M.D.Fla. 1997); *In re Dow Corning Corp.*, 280 F.3d 648 (6th Cir. 2002); *In re Continental Airlines*, 203 F.3d 203 (3rd

Cir. 2000); *In re Specialty Equip. Co., Inc.*, 3 F.3d 1043 (7th Cir. 1993); *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285 (2nd Cir. 1992); *In re A.H. Robins Co., Inc.*, 880 F.2d 694 (4th Cir. 1989).

24.   The Eleventh Circuit has not directly ruled on this issue, but has peripherally addressed the concept. *See In re Munford, Inc.*, 97 F.3d 449 (11th Cir. 1996) (approving third party non-debtor releases in a settlement agreement in a related adversary proceeding); *Romagosa v. Thomas (In re Van Diepen, P.A.)*, 236 Fed. Appx. 498 (11th Cir. 2007) (discussing in dicta non-debtor releases).

25.   In determining whether a non-debtor release is fair and necessary, Courts have considered various factors:

> (1) Whether the debtor and the third party share an identity of interest, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete the assets of the estate;
>
> (2) Whether the non-debtor has contributed substantial assets to the reorganization;
>
> (3) Whether the injunction is essential to reorganization, namely, the reorganization hinges on the debtor being free from indirect suits against parties who would have indemnity or contribution claims against the debtor;
>
> (4) Whether the impacted class, or classes, has overwhelmingly voted to accept the plan;
>
> (5) Whether the plan provides a mechanism to pay for all, or substantially all, of the class, or classes, affected by the injunction;
>
> (6) Whether the plan provides an opportunity for those claimants who choose not to settle to recover in full, and;
>
> (7) Whether the bankruptcy court made a record of specific factual findings that support its conclusions.

26.   Under *Transit*, in order for a debtor to confirm a plan of reorganization containing a non-debtor release, the debtor must demonstrate that unusual circumstances exist, and that the

non-debtor release is fair and necessary, utilizing the applicable factors set forth above. *In re Transit Group, Inc.*, 286 B.R. 811 (Bankr. M.D.Fla. 2002).

27. Allowing non-debtor releases is the exception, not the norm, and debtors should not automatically expect to release officers, directors, insurers, or creditors from future liability, unless some extraordinary reason is proven. *In re Transit Group, Inc.*, 286 B.R. 811 (Bankr. M.D.Fla. 2002) (approving a non-debtor release where such party extended substantial new monies necessary to the success of the debtor's reorganization).

28. The Proposed Release, Discharge Provisions, and other releases sought by the Debtors under the Plan are too broad and should in no way impact Dr. Pan's rights and remedies and any insurance coverage for the claims raised in the State Court Action.

B. *The Plan is not proposed in good faith.*

29. In order to be confirmed, a chapter 11 reorganization plan must be submitted in good faith and not by any means forbidden by law. *See* 11 U.S.C. § 1129(a)(3). According to the good faith requirement of section 1129(a)(3), the Court must look to the Plan and determine, in light of the particular facts and circumstances, whether the plan will fairly achieve a result consistent with the Bankruptcy Code. The proper inquiry is whether the plan constitutes an abuse of the provisions, purpose or spirit of the Bankruptcy Code. The court should judge each case on its own facts after considering all the circumstances of the case. *See, e.g., Noreen v. Slattengren,* 974 F.2d 75, 76 (8th Cir. 1992).

30. Whether a plan is proposed in good faith turns on an examination of the totality of the circumstances surrounding the plan. *See Noreen*, 974 F.2d at 76; *Handeen v. LeMaire (In re LeMaire)*, 898 F.2d 1346, 1349 (8th Cir. 1990). The Court must focus on factors such as whether the plan proponent has stated debts and expenses accurately; whether the plan proponent

has made any fraudulent misrepresentation to mislead the bankruptcy court; or whether the plan proponent has unfairly manipulated the Bankruptcy Code. *See Noreen,* 974 F.2d at 76; *In re LeMaire,* 898 F.2d at 1349; *In re Trans World Airlines, Inc.*, 185 B.R. 302, 314 (Bankr. E.D. Mo. 1995). Pre-filing conduct is not determinative of the good faith issue, but it is nonetheless relevant. *See In re LeMaire,* 898 F.2d at 1352. In essence, the good faith inquiry looks at the plan proponent's fairness in dealing with creditors and other parties in interest. *See In re Barger,* 233 B.R. 80, 83-84 (8th Cir. BAP 1999).

31. The Debtors have refused to cooperate and have delayed the progress of the State Court Action at every turn.

32. The Debtors have spent months and millions of dollars trying to hold on to property that they knew or should have known had no hope of supporting a reorganization.

33. Furthermore, in reality, this case is a liquidation and really never appeared to have a chance to be a reorganization. After months of fighting between the primary secured creditor and the Debtor, unsecured creditors are proposed to receive a pittance. Rather than millions of dollars going out the door to pay professional fees and deal with a contested confirmation hearing, it would appear to be in the best interest of creditors that this case be converted to Chapter 7 cases and an independent trustee be appointed to investigate proceedings to date and oversee the liquidation.

C. *To the extent the Debtors fail to satisfy Section 1129(a)(8), the Plan is not fair and equitable.*

34. Section 1129(a)(8) provides that a court shall confirm a plan only if, "[w]ith respect to each class of claims or interests (A) such class has accepted the plan; or (B) such class is not impaired under the plan.

35. Section 1129(b)(a) provides if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

36. The Plan is not fair and equitable.

## IV. Conclusion

37. The broad Proposed Release and the Discharge Provisions contained in the Plan should not be approved.

38. If the Plan is confirmed, Dr. Pan respectfully requests the Court include in the Order confirming the Plan, including but not limited to, the Proposed Release and Discharge Provisions shall in no way impact Dr. Pan's rights and remedies in the State Court Action and any insurance coverage for the claims raised by Dr. Pan in that action.

WHEREFORE, Ellen Pan, M.D., respectfully requests this Court enter an Order (1) sustaining this Objection, (2) denying confirmation of the Plan and converting this case to a Chapter 7 case, or in the alternative, (3) provide in any Order confirming the Plan that the Proposed Release shall in no way impact Dr. Pan's rights and remedies in the State Court Action and in any insurance coverage for the claims raised by Dr. Pan in that action, and (4) granting such other and further relief as the Court deems just and proper.

Dated: October 11, 2011.	AKERMAN SENTERFITT

By: */s/ Jacob A. Brown*
   Jacob A. Brown
   Florida Bar No. 0170038
   Email: jacob.brown@akerman.com
   Katherine C. Fackler
   Florida Bar No. 0068549
   Email: katherine.fackler@akerman.com
   50 North Laura Street, Suite 3100
   Jacksonville, Florida  32202
   Telephone: (904) 798-3700
   Facsimile: (904) 798-3730

Attorneys for Ellen Pan, M.D.

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that a copy of the foregoing was furnished either by electronic notification or U.S. Mail, postage prepaid and properly addressed, this 11th day of October, 2011, to:

RQB Resort, LP
1000 PGA Tour Blvd.
Ponte Vedra Beach, FL 32082

Cynthia C. Jackson, Esq.
Smith Hulsey & Busey
225 Water Street, Suite 1800
Jacksonville, FL 32201

Miriam G. Suarez
United States Trustee – JAX 11
135 West Central Blvd Suite 620
Orlando, FL 32801

                                                                              */s/ Jacob A. Brown*
                                                                              Attorney