## UNITED STATES BANKRUPTCY COURT
### MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 3:10-bk-01596 |
| RQB Resort, LP and RQB Development, LP,[1] | ) | Chapter 11 |
| | ) | Jointly Administered |
| Debtors. | | |

## ORDER CONFIRMING DEBTORS'
## SECOND AMENDED JOINT PLAN OF REORGANIZATION

These Chapter 11 Cases were before the Court on October 18, 2011 (the "Confirmation Hearing") to consider confirmation of the Debtors' Second Amended Joint Plan of Reorganization dated September 20, 2011 (ECF No. 537; the "Plan").[2] Upon consideration of the Plan, the argument of counsel and evidence presented at the Confirmation Hearing, and the support for the Plan expressed by secured creditor Goldman Sachs Mortgage Company and other creditors at the Confirmation Hearing, the Court makes the following findings of fact and conclusions of law:

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

The findings and conclusions set forth below and in the record of the Confirmation Hearing constitute this Court's findings of fact and conclusions of law

---

[1] RQB Resort, LP's tax identification number is 86-1161952. RQB Development, LP's tax identification number is 13-4322680. The principal address of each debtor is 1000 PGA Tour Boulevard, Ponte Vedra Beach, FL 32082.

[2] Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to such terms in the Plan

pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable to these proceedings by Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 7052 and 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

A.    **Jurisdiction and Venue**.    This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2), and this Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules and should be confirmed.

B.    **Transmittal and Service of Notices**.    Notice of the Confirmation Hearing and the relevant deadlines for submission of objections, as prescribed by this Court in its Order Approving Second Amended Disclosure Statement, Scheduling Confirmation Hearing, and Fixing Time for Filing Acceptance or Rejection of Plan (ECF No. 538) (the "Disclosure Statement Order") has been provided and is adequate and sufficient pursuant to Section 1128 of the Bankruptcy Code and Rules 2002(b) and 3020 of the Bankruptcy Rules. Additionally, the Disclosure Statement and the Plan, which were transmitted and served as set forth in the Debtors' Certificate of Service dated September 22, 2011 (ECF No. 540), are deemed to have been transmitted and served in compliance with the Disclosure Statement Order and the Bankruptcy Rules. Such transmittal and service are

adequate and sufficient, and no other or further notice of the Confirmation Hearing, the Disclosure Statement or the Plan is required.

C.      **Solicitation**. The solicitation of votes on the Plan was conducted in good faith and in compliance with Sections 1125 and 1126 of the Bankruptcy Code, Rules 3017 and 3018 of the Bankruptcy Rules, the Disclosure Statement Order, and all other applicable provisions of the Bankruptcy Code, Rules, laws or regulations.

D.      **Ballots and Tabulations**. All procedures used to distribute solicitation materials to the applicable Holders of Claims and to tabulate ballots were fairly and properly conducted in accordance with the Disclosure Statement Order, the Bankruptcy Code, and the Bankruptcy Rules. Votes to accept or reject the Plan have been solicited and tabulated in good faith and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order.   On October 13, 2011, the Debtors filed a Ballot Tabulation (ECF No. 589) in accordance with Local Rule 3018-1(a).

E.      **Compliance with Section 1129(a)(1) of the Bankruptcy Code**.   The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying Section 1129(a)(1) of the Bankruptcy Code.

i.      Proper Classifications. The classification of Claims and Equity Interests under the Plan is reasonable. Valid business, factual and legal reasons reasonably exist for the classifications set forth in the Plan. Claims or Equity Interests in each Class are substantially similar to other Claims or Equity Interests in such Class, and the Plan therefore satisfies the requirements of Section 1122(a) of the Bankruptcy Code.

ii.    Designation of Classes. The Plan properly designates the Classes of Claims and Equity Interests in accordance with the applicable provisions of the Bankruptcy Code, including Sections 1122 and 1123(a)(1) of the Bankruptcy Code.

iii.    Specified Impaired Classes. Classes 1, 2, 3 and 4 are impaired and have voted in favor of the Plan, thereby satisfying the requirements of Section 1123(a)(3) of the Bankruptcy Code.

iv.    No Discrimination. The Plan provides for the same treatment of each Claim or Equity Interest of a particular Class, thereby satisfying the requirements of Section 1123(a)(4) of the Bankruptcy Code.

v.    Implementation of the Plan. The Plan provides for adequate means for its implementation satisfying the requirements of Section 1123(a)(5) of the Bankruptcy Code, including, but not limited to (a) satisfying Claims through (i) the transfer of the Debtors' Encumbered Property to either Goldman Sachs Mortgage Company or the Goldman Transferee(s) (collectively, "Goldman") and (ii) the distribution of the Trade Claims Fund and the Unsecured Claims Fund; (iii) appointing and authorizing the Distribution Agent to liquidate and dissolve the Debtors; and (iv) authorizing the execution, delivery, filing, or recording of all contracts, instruments, releases, and other agreements or documents relating to the foregoing.

vi.    Additional Plan Provisions. The Plan does not contain any provision that is inconsistent with the provisions of the Bankruptcy Code and, therefore, satisfies Section 1123(b)(6) of the Bankruptcy Code.

   vii. <u>Identity of Proponents</u>. In accordance with Rule 3016(a) of the Bankruptcy Rules, the Plan is dated and identifies the Debtors as the Plan's proponents.

   F. **Debtors' Compliance**. The Debtors have complied with each of the applicable provisions of the Bankruptcy Code including, without limitation, Sections 1125 and 1126 of the Bankruptcy Code and, therefore, have satisfied the requirements of Section 1129(a)(2) of the Bankruptcy Code, as follows:

   i. The Debtors have the right to submit the Plan under Section 1121(a) of the Bankruptcy Code;

   ii. The Debtors have complied with each of the applicable provisions of the Bankruptcy Code, as otherwise provided or permitted by orders of the Court; and

   iii. The Debtors have complied with each of the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and the Disclosure Statement Order in transmitting notices and disclosure and solicitation materials with respect to the Plan.

   G. **Proposed in Good Faith**. The Plan has been proposed in good faith and not by any means forbidden by law, thereby satisfying the requirements of Section 1129(a)(3) of the Bankruptcy Code. In determining that the Plan has been proposed in good faith, the Court has considered the evidence presented at the confirmation hearing and has examined the totality of the circumstances surrounding the filing and prosecution of the Chapter 11 Cases and the formulation of the Plan. The Plan was proposed, for proper purposes, including (i) maximizing the value of the Debtors' Estates and (ii) fairly distributing the value of the Debtors' Estates among their creditors.

H.    **Payments for Services or Costs and Expenses**.  To the extent required by the Bankruptcy Code, the Bankruptcy Rules, or orders of this Court, any payments made by the Debtors for services or for costs and expenses in, or in connection with, the Chapter 11 Cases or the Plan have been approved by or are subject to the approval of this Court as reasonable. Accordingly, the Plan satisfies the requirements of Section 1129(a)(4) of the Bankruptcy Code.

I.    **Directors, Officers, and Insiders**.  The Debtors adequately disclosed or otherwise identified the Distribution Agent as the person responsible for administering the transfer and distribution of the Debtors' assets and the completion of the Debtors' affairs following confirmation of the Plan. Accordingly, the Plan complies with the requirements of Section 1129(a)(5) of the Bankruptcy Code.

J.    **No Rate Changes**.   No governmental regulatory commission has jurisdiction, after confirmation of the Plan, over the rates of the Debtors.  Thus, Section 1129(a)(6) of the Bankruptcy Code is not applicable in these Chapter 11 Cases.

K.    **Best Interests of Creditors**.  The Plan satisfies Section 1129(a)(7) of the Bankruptcy Code. With respect to each Impaired Class of Claims, each Holder of a Claim against the Debtors: (i) has accepted the Plan; or (ii) will receive or retain under the Plan, on account of such Claim, property of a value, as of the Effective Date of the Plan, that is not less than the amount that such Holder would receive or retain if the Debtors were to be liquidated under Chapter 7 of the Bankruptcy Code on such date. The liquidation analysis provided in the Disclosure Statement and other evidence proffered, adduced, or

presented at the Confirmation Hearing are persuasive and credible and have not been controverted by other evidence.

L.    **Acceptance by Certain Classes**.  Classes 1, 2, 3 and 4 are impaired and designated as voting Classes under the Plan. Classes 1, 2, 3 and 4 have voted to accept the Plan. Class 5 consists of all existing Equity Interests in the Debtors. Class 5 is not receiving or retaining any property under the Plan and, therefore, is deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code. Although Section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to Class 5, the Plan is confirmable over the deemed rejection by Holders of Class 5 Equity Interests because the Plan satisfies Section 1129(b)(2)(C) of the Bankruptcy Code.

M.    **Treatment of Administrative and Priority Claims**.  The treatment of Allowed Administrative Claims, Allowed Priority Tax Claims and Allowed Other Priority Claims under Article II of the Plan satisfies the applicable requirements of Section 1129(a)(9) of the Bankruptcy Code.

N.    **Acceptance by Impaired Classes**.  Classes 1, 2, 3 and 4 voted to accept the Plan by the requisite majority, determined without including any acceptance of the Plan by any insider, thereby satisfying the requirements of Section 1129(a)(10) of the Bankruptcy Code.

O.    **Feasibility**.  The Disclosure Statement and the evidence proffered, adduced, or presented at the Confirmation Hearing (i) are persuasive and credible, (ii) have not been controverted by other evidence, and (iii) establish that the Plan has more

than a reasonable likelihood of success and satisfies the feasibility standard, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

P.      **Payment of Fees**. The fees due and payable by the Debtors to the United States Trustee or the Clerk of this Court, as provided under 28 U.S.C. § 1930(a)(6), have been paid or will be paid by the Post-Confirmation Debtors pursuant to the Plan. Thus, the requirements of Section 1129(a)(12) of the Bankruptcy Code are satisfied.

Q.      **Continuation of Retiree Benefits**. Section 1129(a)(13) of the Bankruptcy Code requires a chapter 11 plan to provide for retiree benefits at levels established pursuant to Section 1114 of the Bankruptcy Code. The Debtors did not, either as of the commencement of the Chapter 11 Cases or at any time during the Chapter 11 Cases, have any plans, funds, or programs providing or reimbursing retired employees and their spouses and dependents for medical, surgical or hospital care benefits, or benefits in the event of sickness, accident, disability or death. Accordingly, the requirements of section 1129(a)(13) of the Bankruptcy Code are not applicable to the Chapter 11 Cases or the Plan.

R.      **Other Inapplicable Provisions of Section 1129(a)**. Sections 1129(a)(14), (a)(15) and (a)(16) are not applicable to these Bankruptcy Cases.

S.      **Fair and Equitable; Confirmation of Plan Over Nonacceptance of Classes**. Based on the evidence proffered, adduced, or presented by the Debtors at the Confirmation Hearing, the Plan does not discriminate unfairly and is fair and equitable with respect to the Class 5 Equity Interests as required by Section 1129(b) of the Bankruptcy Code. The Plan may be confirmed under Section 1129(b) of the Bankruptcy

Code even if the Plan fails to satisfy Section 1129(a)(8) of the Bankruptcy Code with respect to Class 5 Equity Interests because the liquidation analysis attached to the Disclosure Statement establishes that (i) the Debtors' assets will be insufficient to repay the Debtors' creditors in full and (ii) there is no equity or other value within the Debtors' Estates to distribute to holders of Class 5 Equity Interests. As such, the requirements of Section 1129(b)(2) of the Bankruptcy Code are satisfied.

T.    **Principal Purpose**.  No party in interest that is a governmental unit has requested that the Court not confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933, 15 U.S.C. § 77e, and the principal purpose of the Plan is not such avoidance. Accordingly, the Plan satisfies the requirements of Section 1129(d) of the Bankruptcy Code.

U.    **Good Faith Participation**.  Based upon the record before the Court, the Debtors, and their respective general partners, officers, directors, agents, counsel and financial advisors have acted in good faith within the meaning of Section 1125(e) of the Bankruptcy Code and in compliance with the provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to the Plan, including without limitation, the formulation, negotiation and implementation of the Plan, the solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan and the Confirmation of the Plan, and are entitled to the protections afforded by Section 1125(e) of the Bankruptcy Code.

V.   **Retention of Jurisdiction**.  The Court may properly retain jurisdiction over the matters set forth in Article XI of the Plan.

W.   **Assumption, Assignment and Rejection of Executory Contracts**.

     (i)   The Plan provides that the Debtors:

        a.   shall assume and assign, to Goldman or the Goldman Transferee(s), the Franchise Agreement (subject to the terms of that certain comfort letter entered into among Goldman, Marriott and the Debtors in connection with the Debtors' acquisition of the Property on June 30, 2006), the Original Courses Agreement and the Restated Courses Agreement, pursuant to the terms of the Plan and this Confirmation Order, which shall be referred to as the "Plan Assumed Contracts";

        b.   shall assume and assign, to Goldman or the Goldman Transferee(s), the Cabana Club Agreements, the Spa Club Agreements, the Sawgrass Golf Portal Agreement and the Marsh Landing Golf Portal Agreement, pursuant to the terms of a separate motion to be filed by the Debtors, which shall be referred to as the "Motion Assumed Contracts";

        c.   may assume and assign, to Goldman or the Goldman Transferee(s), the Other Executory Contracts through separate motions to be filed by the Debtors or Post-Confirmation Debtors within thirty days following the Effective Date; and

        d.   shall reject (i) the Interstate Management Agreement on the earlier to occur of one hundred and eighty days following the Effective Date or thirty days following written notice by the Post-Confirmation Debtors and Goldman to

10

Interstate and (ii) the balance of the Debtor's or Debtors' Executory Contracts on the Plan's Effective Date (collectively, the "Plan Rejected Contracts").

(ii)    The Debtors' (a) assumption of and assignment to Goldman of the Plan Assumed Contracts and (b) rejection of the Plan Rejected Contracts (as well as any Other Executory Contract that is not assumed by a separate motion to be filed within thirty days following the Effective Date) is in the best interests of the Debtors and their Estates.    Upon the Post-Confirmation Debtors' tender of a $407,000 Cure Amount to Marriott, with no Cure Amounts payable to the Tour or the TPC at Sawgrass, none of Marriott, the Tour, or the TPC at Sawgrass shall have any claims against the Debtors, the Post-Confirmation Debtors, Goldman or the Goldman Transferee(s) for liabilities arising prior to the Plan's Effective Date. The Debtors have satisfied the provisions of Section 365 of the Code with respect to the assumption and assignment of the Plan Assumed Contracts pursuant to Article VI of the Plan. Further, the Debtors have provided sufficient and undisputed evidence of the ability of Goldman or the Goldman Transferee(s) to provide adequate assurance of future performance of the Plan Assumed Contracts.    In connection with Interstate Management Agreement, the Goldman Transferee(s) shall be required to perform the obligations of the Debtors to Interstate under the Interstate Management Agreement accruing or arising from and after the Effective Date, and with respect to the period commencing on the Effective Date through the effective date of rejection of the Interstate Management Agreement, all as set forth in more detail in that certain Manager's Consent and Subordination of Management Agreement, entered into between Goldman and Interstate in connection with the Debtors'

11

acquisition of the Property on June 30, 2006 (the "Interstate Subordination Agreement"). In no event shall Goldman or the Goldman Transferee(s) be (i) liable for any act or omission of the Debtors, (ii) liable for payment of any cancellation or termination fees under the Interstate Management Agreement or payment of any accrued but unpaid base or incentive management fees, (iii) bound by any amendment or modification of the Interstate Management Agreement made without Goldman's prior written consent or (iv) subject to any counterclaim or claim which Interstate may assert or is entitled to assert against the Estates. Nothing herein shall impair Goldman's or Interstate's rights under the Interstate Subordination Agreement. The occurrence of the Effective Date shall constitute notice by Goldman and the Goldman Transferee(s) to Interstate under Section 3(g) of the Interstate Subordination Agreement to undertake those obligations set forth in parts (i) and (ii) of that section, to the extent set forth above and in Section 3(d)(i) of the Interstate Subordination Agreement.

X.    **Preservation of Causes of Action**. It is in the best interests of the creditors and equity interest holders that the causes of action that are not expressly released under the Plan (or the Mutual Release Agreement attached as Exhibit IX.B.4 to the Plan) be retained by the Post-Confirmation Debtors (through the Distribution Agent) in order to maximize the value of the Debtors' Estates.

Y.    **Confirmation Requirements Satisfied**. All of the requirements for confirmation under 11 U.S.C. § 1129 have been satisfied. Confirmation of the Plan is in the best interests of the Estates, their creditors, their equity security holders, and all other parties in interest.

Accordingly, it is **ORDERED** that:

1.    **Confirmation**.    The Plan is confirmed under Section 1129 of the Bankruptcy Code. The terms of the Plan and the exhibits attached thereto are incorporated by reference into, and are an integral part of, the Plan and this Confirmation Order.

2.    **Compliance with Applicable Provisions of the Bankruptcy Code**. The Plan complies with the requirements of Sections 1122, 1123 and 1129 of the Bankruptcy Code.

3.    **Plan Classification Controlling**. The classification of Claims and Equity Interests for purposes of distributions to be made under the Plan shall by governed solely by the terms of the Plan. The classifications set forth on the ballots tendered to or returned by the Debtors' creditors in connection with voting on the Plan (a) were set forth on the ballots solely for purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims or Equity Interests under the Plan for distribution purposes, (c) may not be relied upon by a holder of any Claim or Equity Interest as representing the actual classification of such Claim or Interest under the Plan for distribution purposes, and (d) shall not be binding upon the Debtors or their Estates.

4.    **Certain Effects of Confirmation; Discharge; Injunction**.    All of the provisions of Articles X of the Plan, subject to the limitations set forth therein, are incorporated into this Confirmation Order by reference as if set forth in this Order and are approved in their entirety. Neither the Plan nor this Confirmation Order affects, impairs, limits, compromises, settles or in any way impacts or changes any claim or right held by the

Debtors' creditors against any third party, except as otherwise set forth in the Plan or in this Confirmation Order.

5.      **Ellen Pan, M.D.**.  This Order shall have no effect on Dr. Ellen Pan's ability to seek recovery from the Debtors' insurance providers in a personal injury action against the Debtors and other defendants styled as *Ellen Pan, M.D. v. RQB Resort, L.P., aka Sawgrass Marriott Golf Resort & Cabana Club, et al.*, Circuit Court, Seventh Judicial Circuit, in and for St. Johns County, Florida; Case No. CA10-299, Division 55; provided, however, that nothing herein shall enable Dr. Pan to seek recovery against Goldman, the Goldman Transferee(s) or the Encumbered Property. Further, the additional provisions in the October 17, 2011 Stipulation Between the Debtors and Ellen Pan, M.D. (ECF No. 595) are incorporated into this Confirmation Order by reference.

6.      **Cancellation of Existing Interests and Agreements**.  Except for purposes of evidencing a right to receive a distribution under the Plan or as otherwise provided thereunder, and except as provided in the Plan or this Confirmation Order, on the Effective Date all the agreements or other documents reflecting (a) any Claims or rights of any Holder of a Claim or Equity Interest against the Debtors, including all indentures and notes evidencing such Claims; (b) any security interests, liens or encumbrances against property of the Debtors with respect to such Claims; and (c) all certificates evidencing Equity Interests, shall be deemed released, extinguished, cancelled, and of no further force and effect without the need for further action on the part of the Debtors or the Post-Confirmation Debtors.

14

7.    **Assumptions, Assignments and Rejections**. The (i) assumption of the Plan Assumed Contracts and (ii) the rejection of the Plan Rejected Contracts, as provided in Article VI of the Plan, are approved in their entirety.

8.    **Assumption and Assignment of Other Executory Contracts**.    Within thirty days following the Effective Date, the Post-Confirmation Debtors, with the consent and approval of Goldman, may file a motion or motions to assume any of the Other Executory Contracts.  To the extent the Post-Confirmation Debtors do not file a motion with the Bankruptcy Court to assume an Other Executory Contract within thirty days of the Effective Date, such Other Executory Contract shall be deemed rejected on such date.

9.    **Bar Date for Rejection Damage Claims**.  With the exception of Interstate's Claim(s) against the Debtors' pursuant to Article VI.B.2 of the Plan (which Claim(s) shall be filed within thirty days following the effective date of the Debtors' rejection of the Interstate Management Agreement), Claims arising out of the rejection of an Executory Contract pursuant to Article VI of the Plan must be filed with the Court no later than the later of (a) thirty days from the Effective Date, or (b) thirty days from entry of the order rejecting such contract or lease.  Any Claims not filed within such time periods will be forever barred from assertion against any of the Debtors or the Post-Confirmation Debtors.

10.    **Distribution to Creditors**.    Pursuant to the terms of the Plan, the Distribution Agent shall implement the distributions, including the distribution of the Trade Claims Fund and the Unsecured Claims Fund, as provided for under the Plan, and as estimated in the Schedule of Sources and Uses attached to the Disclosure Statement.

11.    **Retained Professional Claims and Final Fee Applications**.  Pursuant to the Court's September 20, 2011, order approving the Disclosure Statement and setting a hearing on Confirmation of the Plan, the Court established October 4, 2011, as the deadline for filing professional fee applications (the "Initial Deadline for Professional Fee Applications").  All final requests for payment by all professionals retained by an order of this Court under Section 327 of the Bankruptcy Code that are seeking an award by the Court of compensation for services rendered or reimbursement of expenses incurred after the Initial Deadline for Professional Fee Applications through and including the Effective Date of the Plan under Sections 503(b)(2), 503(b)(3) or 503(b)(5) of the Bankruptcy Code shall be filed and served on counsel for the Post-Confirmation Debtors and as otherwise required by the Court and the Bankruptcy Code on or before thirty days after the Effective Date, unless otherwise ordered by the Court. The Post-Confirmation Debtors shall pay in full upon a determination of allowance of such Claims in such amounts as are allowed by the Court, after notice and hearing, or upon such other less favorable terms as may be agreed upon by the holder of such an Allowed Administrative Expense Claim and approved by the Court after notice and hearing. Any request for payment of an Administrative Expense Claim by a professional or other person specified in this Paragraph that is not filed by the applicable deadline set forth above shall be barred.

12.    **Bar Date for Administrative Claims**.  Pursuant to the Court's September 20, 2011, order approving the Disclosure Statement and setting a hearing on Confirmation of the Plan, the Court established October 4, 2011, as the deadline for filing administrative expense claims (the "Initial Deadline for Filing Administrative Claims").  Except as

16

otherwise provided in Article II of the Plan, unless previously filed, requests for payment of Administrative Claims incurred after the Initial Deadline for filing Administrative Claims through and including the Effective Date must be filed and served on the Post-Confirmation Debtors pursuant to the procedures specified in this Confirmation Order and the notice of entry of this Confirmation Order, no later than thirty days after the Effective Date. Holders of Administrative Claims that are required to file and to serve a request for payment of such Administrative Claims and that do not file and serve such a request by the applicable Bar Date will be forever barred from asserting such Administrative Claims against the Debtors or their respective Property, and such Administrative Claims will be deemed discharged as of the Effective Date. Objections to such requests must be filed and served on the Post-Confirmation Debtors and the requesting party within sixty days after the Effective Date.

13.    **Ordinary Course Liabilities**.  Holders of Administrative Claims based on liabilities incurred by the Debtors in the ordinary course of its business will not be required to file or serve any request for payment of such Administrative Claims, and such Claims will be paid when due in the ordinary course.

14.    **Duties and Responsibilities of the Distribution Agent**.

Except as otherwise set forth in this Plan, on the Effective Date, the Distribution Agent shall be appointed by the Confirmation Order and:

i.    shall succeed to all of the Debtors' and Post-Confirmation Debtors' rights and privileges;

ii.      shall have the full authority, subject to Goldman's consent and approval, to review and object to Claims against the Post-Confirmation Debtors' Estates on or before the Claim objection deadline;

iii.     shall have the full and exclusive authority (as representative of the Post-Confirmation Debtors' Estates pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code) to prosecute and defend, as appropriate and subject to Goldman's consent and approval, any action constituting property of either of the Post-Confirmation Debtors' Estates, through final judgment, any appeals deemed necessary and appropriate by the Distribution Agent and collection; provided, however, that the Distribution Agent shall be authorized at any point in any litigation (i) to enter into such settlements, subject to Goldman's consent and approval, as the Distribution Agent deems to be in the best interest of creditors, subject to Bankruptcy Court approval after notice and a hearing in accordance with Bankruptcy Rule 9019; or (ii) to dismiss and/or decide not to prosecute any such litigation, subject to Goldman's consent and approval, if the Distribution Agent deems such action to be in the best interest of creditors;

iv.      shall have all the power and authority of a debtor-in-possession under the Bankruptcy Code including, without limitation, the power to abandon or administer property of the Debtors' Estates and to take discovery of any entity (including Rule 2004 examinations);

v.       may consult with professionals and shall not be liable for any action taken or omitted to be taken by him in accordance with the advice of his professions.

vi.    shall, with Goldman's consent and approval, be authorized to prosecute any pending litigation claims, and to file any appropriate litigation claims. As of the Effective Date, the Distribution Agent shall be authorized to prosecute any litigation claim in either Debtors' names or in his own name for the benefit of holders of Allowed Claims under the Plan;

vii.    shall have the right to retain Smith Hulsey & Busey and such other professionals as reasonably required and be entitled to recover his reasonable fees and costs (as well as those of his professionals) without the necessity of Bankruptcy Court approval. The Distribution Agent and his professionals shall send their respective fee statements to Goldman and the United States Trustee at the end of each month reflecting the services rendered and costs incurred by the Distribution Agent (and his professionals) to carry out their duties under this Plan. If neither Goldman nor the United States Trustee serves a written objection to such fees statements on the Distribution Agent within ten days after their receipt, the Distribution Agent, on behalf of the Post-Confirmation Debtors, may pay such fee statements in full without any Bankruptcy Court approval. In the event Goldman or the United States Trustee serve a written objection to such fee statements on the Distribution Agent, the Bankruptcy Court shall have jurisdiction to determine the reasonable fees and costs payable to the Distribution Agent and/or his professionals;

viii.    shall, at such time as final distributions have been made, be authorized and directed to file a final accounting with the Bankruptcy Court, together

with a final report, and shall request entry of a final decree closing the Bankruptcy Cases; and

      ix.    shall be authorized and directed to prepare reports with the U.S. Trustee, as necessary; and

      x.    shall, with Interstate's support and assistance, file or cause to be filed all federal, state and local tax returns due in respect of the 2011 and 2012 fiscal years and any fiscal year thereafter. The Distribution Agent is further authorized to amend any tax returned filed prior to 2011.

    15.    **Preservation of Rights of Action and Claim Objections**.  Except as otherwise provided in the Plan or Confirmation Order, after the Effective Date, the Post-Confirmation Debtors, with Goldman's consent and approval, shall have all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, in any court or other tribunal including, without limitation, in an adversary proceeding filed in one or more of the Chapter 11 Cases. Furthermore, Goldman, or the Post-Confirmation Debtors, with Goldman's consent and approval, shall have the right to object to the allowance of any Claim on any ground, including pursuant to Section 502(d) of the Bankruptcy Code; provided, however, that Goldman shall have the exclusive authority to object to any Claim asserted by an insider of the Debtors (including without limitation any Claim asserted by SGR or Interstate).

    16.    **Directors and Officers of Post-Confirmation Debtors**.  The Post-Confirmation Debtors shall retain the Debtors' names and will proceed to wind down their affairs under the direction of the Distribution Agent.

17.    **General Authorizations**. The Post-Confirmation Debtors, the general partners of the Debtors, the Distribution Agent, and any of their officers, employees, agents or attorneys, as applicable, are authorized and empowered pursuant to Sections 105 and 1142(b) of the Bankruptcy Code and any applicable state law to execute, acknowledge, and deliver such deeds, assignments, conveyances, releases, and other assurances, documents, instruments of transfer, uniform commercial code financing statements, trust agreements, mortgages, indentures, security agreements, and bills of sale, and to take any and all actions reasonably necessary or appropriate to implement, effectuate, and consummate any and all of the documents or transactions contemplated by the Plan or this Confirmation Order, without further order of the Court, further partnership, corporate or other action or further action. Without limiting the generality of the foregoing, this Confirmation Order shall constitute all approvals and consents, if any, required by applicable state partnership and corporate laws, and all other applicable partnership, corporate, trust and other laws of the applicable governmental units with respect to the implementation and consummation of the Plan and this Confirmation Order and the transaction contemplated thereby and hereby. Such actions are approved in all respects and shall be deemed to have occurred and be effective on the Effective Date. Following the Effective Date, each of the contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents entered into by the Debtors or the Post-Confirmation Debtors in connection with the Plan shall be legal, valid and binding obligations of the Post-Confirmation Debtors and enforceable against the Post-Confirmation Debtors in accordance with their respective terms.

18.     **Binding Effect**. Except as otherwise provided in Section 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, and subject to the Effective Date, the provisions of this Plan shall bind all parties in interest including all present and former holders of a Claim against, or Equity Interest in, the Debtors and their respective successors, affiliates and assigns, whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder has filed a Proof of Claim or Interest or accepted the Plan. The holders of liens satisfied, discharged and released under the Plan shall execute any and all documentation reasonably requested by the Post-Confirmation Debtors evidencing the satisfaction, discharge and release of such liens and such liens shall be deemed satisfied, discharged and released by operation of this Confirmation Order.

19.     **Filing and Recording**. This Confirmation Order (a) is and shall be effective as a determination that, on the Effective Date, except as otherwise provided in the Plan or this Confirmation Order, all Claims and Equity Interests existing prior to such date have been unconditionally released, discharged and terminated in accordance with this Confirmation Order, (b) is and shall be effective to release and cancel the security interests, liens and encumbrances in property of the Debtors in accordance with this Confirmation Order, and (c) is and shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who

may be required to report or insure any title or state of title in or with respect to the property of the Debtors or the Post-Confirmation Debtors, including the Encumbered Property being transferred to Goldman or the Goldman Transferee(s) pursuant to the Plan. Each and every federal, state and local government agency is hereby directed to accept any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan and this Confirmation Order without payment of any recording tax, stamp tax, transfer tax or similar tax imposed by state or local law, including without limitation, any deeds, bills of sale or other conveyance documents transferring the Encumbered Property to Goldman or the Goldman Transferee(s).

20.    The Debtors, Goldman and the Goldman Transferee(s) are hereby authorized to deliver this Confirmation Order to any state or local recording officer, and such officer (or any person or entity with authority over any of the foregoing) shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment and shall accept for filing such documents or instruments without charging any stamp tax, recording tax, personal property transfer tax, mortgage or other similar tax. The Court specifically retains jurisdiction to enforce the foregoing direction, by contempt or otherwise.

21.    The Debtors, Goldman or the Goldman Transferee(s) are hereby authorized to record this Confirmation Order with any state or local recording office, and such recording office is hereby directed to accept and record a copy of this Confirmation Order.

22.    **Compromise and Settlement**. From and after the Effective Date, Goldman or the Post-Confirmation Debtors, with the consent and approval of Goldman, may

compromise and settle, with Goldman's consent, Claims without further Bankruptcy Court approval; provided, however, that Goldman shall have exclusive authority to compromise or settle any insider Claims.

23.     **Releases**.

i.      Releases by Debtors. As of the Effective Date, for good and valuable consideration, the adequacy of which is confirmed, the Debtors, the Post-Confirmation Debtors, and any Person or entity seeking to exercise the rights of the Debtors' Estates, including, without limitation, any estate representative appointed or selected pursuant to Section 1123(b)(3) of the Bankruptcy Code (collectively, the "Debtor Releasors"), will be deemed to forever release, waive, and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action (including claims or causes of action arising under Chapter 5 of the Bankruptcy Code), and liabilities whatsoever (other than claims resulting from fraud, gross negligence, or willful misconduct) in connection with or related to the Debtors, the conduct of the Debtors' business, the Chapter 11 Cases, or the Plan (other than the rights of the Debtors, Goldman and the Goldman Transferee(s) to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered thereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the conduct of the Debtors' business, the Post-

Confirmation Debtors, the Chapter 11 Cases, or the Plan, and that may be asserted by or on behalf of the Debtors, the Estates or the Post-Confirmation Estates against (i) either of the Debtors, (ii) any of the present or former limited or general partners of the Debtors or any of the present or former officers, directors or employees of such general or limited partners of the Debtors or any of the Debtors' affiliates, David O'Halloran, Patrick Murphy, Niall McFadden and Patrick Kelly, (iii) any professionals of the Debtors, and (iv) Goldman, the Goldman Transferee(s), Archon Group, L.P., Goldman Sachs Bank USA, Goldman Sachs Lending Partners LLC, Goldman Sachs & Co., Sandelman Partners CRE CDO I, Ltd. and Sandelman Realty Loan Funding Corp. I, together with each of their predecessors, successors, assigns, representatives, parents, subsidiaries, affiliates, and its and their respective present and former employees, officers, directors, managing directors, principals, agents, heirs, executors, administrators, predecessors, successors, assigns, representatives and legal advisors (collectively, the "Lender Releasees").

      ii.    <u>Releases by Holders of Claims</u>. As of the Effective Date, for good and valuable consideration, the adequacy of which is confirmed, each holder of a Claim that affirmatively votes in favor of the Plan is deemed to forever release, waive, and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities whatsoever against (i) the Debtors, (ii) the Post-Confirmation Debtors, (iii) the present or former limited or general partners of the Debtors or any of the present or former officers, directors or employees of any of such general or limited partners of the Debtors or any of the Debtors' affiliates (collectively,

25

the "Debtor Releasees"), and (iv) the Lender Releasees, in connection with or related to the Debtors, the conduct of the Debtors' business, the Chapter 11 Cases, or the Plan (other than the rights under the Plan and the contracts, instruments, releases, indentures, and other instrument, agreement or documents delivered thereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereunder arising, in law, equity, or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the conduct of the Debtors' business, the Chapter 11 Cases, or the Plan, except for acts or omissions that are the result of fraud, gross negligence, or willful misconduct. Each of the Debtor Releasees is deemed to forever release, waive, and discharge any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities whatsoever arising on or prior to the Effective Date in any way relating to the Debtors, the conduct of the Debtors' business, the Chapter 11 Cases, or the Plan, that such Debtor Releasees may hold in their individual capacities against each holder of a Claim that affirmatively votes in favor of the Plan.

24.    **Discharge of Debtors**.

i.    Except as otherwise provided in the Plan or in the Confirmation Order, all consideration distributed under the Plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims of any nature whatsoever against the Debtors, the Post-Confirmation Debtors, the Encumbered

Property, Goldman and the Goldman Transferee(s), or any of their assets or properties and, regardless of whether any property is abandoned by order of the Bankruptcy Court, retained, or distributed pursuant to the Plan on account of such claims, upon the Effective Date, the Debtors and the Goldman Transferee(s), and each of them, will (i) be deemed discharged and released under Section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in Section 502 of the Bankruptcy Code. This is so whether or not (A) a Proof of Claim based upon such debt is filed or deemed filed under Section 501 of the Bankruptcy Code, (B) a Claim based upon such debt is allowed under Section 502 of the Bankruptcy Code, (C) a Claim based upon such debt is or has been disallowed by order of the Bankruptcy Court, or (D) the holder of a Claim based upon such debt accepted the Plan.

ii.     As of the Effective Date, except as provided in the Plan or the Confirmation Order, all Persons are precluded from asserting against the Debtors, the Post-Confirmation Debtors, the Encumbered Property, Goldman, or the Goldman Transferee(s), any other or further claims, debts, rights, causes of action, claims for relief, liabilities, or Equity Interests relating to the Debtors based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date.   In accordance with the foregoing, except as provided in the Plan or the Confirmation Order, the Confirmation Order is a judicial determination of the discharge of all such Claims and other debts and liabilities against the Debtors, the Post-Confirmation Debtors, the Encumbered Property, Goldman and the Goldman

Transferee(s), pursuant to Sections 524 and 1141 of the Bankruptcy Code, and such discharge will void any judgment obtained against the Debtors, the Post-Confirmation Debtors, the Encumbered Property, Goldman, or the Goldman Transferee(s) at any time, to the extent that such judgment relates to a discharged Claim.

25.    **Exculpation**. As provided for in Article X.F of the Plan, the Debtors, the Post-Confirmation Debtors, the Lender Releasees, the Goldman Transferee(s), and all of their respective present and former shareholders, limited and general partners, and any of the present and former directors, officers, employees, advisors, professionals, or agents of the Debtors, the Post-Confirmation Debtors, the Lender Releasees, the Goldman Transferee(s), and any general or limited partners of the Debtors or any of the Debtors' affiliates shall neither have nor incur any liability whatsoever to the holder of a Claim or any interest, or any other party-in-interest, or any of their respective agents, employees, representatives, advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, negotiation, or implementation of the Plan, the solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the Confirmation of the Plan, the Consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions which are the result of fraud, gross negligence, or willful misconduct. The foregoing is not intended to limit or otherwise impact any defense of qualified immunity that may be available under applicable law.

26.    **No Post-Confirmation Amended or Filing of Claims**.  A Claim may not be filed or amended after the Confirmation Date without the prior agreement of the Post-Confirmation Debtors and Goldman. Except as otherwise permitted in this Order or in the Plan, a Claim filed or amended after the Confirmation Date shall be deemed disallowed in full and expunged without any action by the Post-Confirmation Debtors.

27.    **Injunction**. Except as provided in the Plan or this Confirmation Order, as of the Effective Date, all Persons that have held, currently hold, may hold, or allege that they hold, a Claim or other debt or liability that is discharged or an Equity Interest that is terminated pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against the Debtors, the Post-Confirmation Debtors, the Encumbered Property, Goldman and the Goldman Transferee(s), and their respective subsidiaries or their property on account of any such discharged Claims, debts, or liabilities or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation, or recoupment of any kind against any debt, liability, or obligation due to the Debtors, the Post-Confirmation Debtors, Goldman, or the Goldman Transferee(s); or (v) commencing or continuing any action, in each such case in any manner, in any place, or against any Person that does not comply with or is inconsistent with the provisions of the Plan.

28.    As of the Effective Date, all Persons that have held, currently hold, or may hold, a Claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, or

liability that is released, or an interest that is terminated, are permanently enjoined from taking any of the following actions on account of such released Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, or liabilities, or interests: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting a setoff against any debt, liability, or obligation due to any released Person; or (v) commencing or continuing any action, in any manner, in any place, or against any Person that does not comply with or is inconsistent with the provisions of the Plan.

29.    Without limiting the effect of the foregoing provisions upon any Person, by accepting distributions pursuant to the Plan, each holder of an Allowed Claim receiving distributions pursuant to the Plan is deemed to have consented to the injunctions set forth above.

30.    **Automatic Stay**. The stay in effect in the Bankruptcy Case pursuant to Section 362(a) of the Bankruptcy Code shall continue to be in effect until the Effective Date, and at that time shall be dissolved and of no further force or effect, subject to the injunction set forth in Paragraphs 27, 28 and 29 of this Confirmation Order and/or Sections 523 and 1141 of the Bankruptcy Code; provided, however, that nothing herein shall bar the filing of documents or the taking of such other actions as are necessary to effectuate the transactions contemplated by the Plan, the consummation of the Plan or by this Confirmation Order prior to the Effective Date.

31.   **Reservation of United States Trustee Duties and Responsibilities**.  The Plan (including, without limitation, the releases contained in the Plan and the Mutual Release attached to the Plan) shall not be construed to inhibit or impair the Office of the United States Trustee in the performance of its statutory duties; provided, however, that this Plan shall finally and completely resolve all civil issues and disputes with the United States Trustee in the Bankruptcy Cases.

32.   **Payment of Fees**.  All fees payable pursuant to Section 1930 of title 18 of the United States Code shall be paid on or prior to the Effective Date, and the Post-Confirmation Debtors shall thereafter pay any statutory fees that are due until these Cases are closed, converted or dismissed.

33.   **Retention of Jurisdiction**.  Notwithstanding confirmation of the Plan or occurrence of the Effective Date, this Court shall retain, but may decline to exercise or abstain from exercising, such jurisdiction as is provided in the Plan and as is legally permissible, including, without limitation, that provided in Articles VIII and IX of the Plan.

34.   **Modification of Plan**.  After the entry of this Confirmation Order and before substantial consummation of the Plan, the Post-Confirmation Debtors may, upon (i) consent and approval of Goldman and (ii) due notice and order of the Court (to the extent required), amend or modify the Plan in accordance with Section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan, in such manner as may be necessary to carry out the purpose and intent of the Plan.

35.    **Severability**. The Confirmation Order will constitute a judicial interpretation that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

36.    **Transfer of Encumbered Assets**.

i.    On the Effective Date, the Debtors are authorized and directed pursuant to Sections 363(k), 1123(a)(5) and 1129(b)(2)(A)(ii) of the Bankruptcy Code to transfer to Goldman, all of the Encumbered Property, including the real property described in the legal descriptions attached to this Order as **Exhibit "A"**, in accordance with the terms and conditions of the Plan, and to take all actions necessary to consummate the Plan on the terms set forth therein.

ii.    The transfer of the Encumbered Property is pursuant to the terms of the Plan, and is necessary to the consummation of the confirmed Plan.

iii.    The Debtors' transfer of the Encumbered Property to Goldman pursuant to the Plan will be a legal, valid, and effective transfer of the Encumbered Property. The Debtors' transfer of the Encumbered Property to Goldman will vest Goldman with good and valid title in and to the Encumbered Property free and clear of any liens, Claims, encumbrances, pledges, mortgages, security interests, charges, options or other interests of any kind or nature other than liens in favor of St. Johns County, Florida for 2011 ad valorem taxes (collectively, the "Claims" and/or "Interests").

iv.    No objection to the proposed Plan treatment of Goldman was made and therefore any holder of any Claim or Interest is deemed to have consented to the transfer.

32

v.     The Debtors are directed and ordered to execute all documents necessary and required to transfer to Goldman all of the Encumbered Property.

vi.     The transfer of the Encumbered Property shall be exempt from stamp, transfer, sales, recording or similar taxes pursuant to Section 1146(a) of the Bankruptcy Code.   This Confirmation Order is and shall be binding upon and shall govern the acts of the St. Johns County, Florida Tax Assessor and the Florida Department of Revenue as well as all other persons and entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons who may be required by operation of law, the duties of their office, or contract to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Encumbered Property.

vii.     This Court retains jurisdiction to (i) implement and enforce the terms and provisions of this Confirmation Order and the Plan, including without limitation, any disputes relating thereto, (ii) determine any disputes relating to or concerning the transfers, execution of documents necessary to effectuate the transfer of licenses, permits, contracts and transfers of cash and cash equivalents at the Hotel and (c) interpret, implement and enforce the provisions of this Confirmation Order and the terms of the Plan.

37.    **Exemption from Certain Taxes and Recording Fees**.  Pursuant to Section 1146(a) of the Bankruptcy Code, the transfer of any other assets, including the making, delivery, filing, or recording of any instrument of transfer under, or in connection with the Plan shall not be taxed under any law imposing a recording tax, stamp tax, transfer tax, or similar tax. Furthermore, and without limiting the foregoing, any transfers from the Debtors to the Post-Confirmation Debtors or to any other Person or entity pursuant to the Plan, as contemplated by the Plan, or pursuant to any agreement regarding the transfer of title to or ownership of any of the Debtors' property in the United States will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, sales or use tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment. All filing or recording officers (or any other Person or entity with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of Section 1146(a) of the Bankruptcy Code, shall forgo the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. The Bankruptcy Court shall retain specific jurisdiction with respect to these matters.

38.    **Omission of Reference to Particular Plan Provisions**.  The failure specifically to include or reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be confirmed in its entirety.

39.    **Plan Controlling**. If there is any direct conflict between the Plan and this Confirmation Order, the terms of the Plan shall control.

40.    **Reversal**. If any or all of the provisions of this Confirmation Order are hereafter reversed, modified or vacated by subsequent order of this Court or any other court, such reversal, modification or vacatur shall not affect the validity or enforceability of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Post-Confirmation Debtors' receipt of written notice of such order. Notwithstanding any such reversal, modification or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan and all related documents or any amendments or modifications thereto.

41.    **No Stay of Confirmation Order**. Pursuant to Rule 3020(e) of the Bankruptcy Rules, this Confirmation Order shall not be stayed and shall be effective upon entry on the docket of this Court.

42.    **Applicable Non-Bankruptcy Law**. To the extent provided in Sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

43.    **Service of Confirmation Order and Post-Confirmation Notices**. The Debtors or their agents shall serve confirmed copies and notice of entry of this Confirmation Order pursuant to Bankruptcy Rules 2002(f)(7), 2002(k) and 3020(c), and Local Bankruptcy

Rule 3020-1(b), to all creditors, indenture trustees and equity security holders of the Debtors no later than five business days after entry of this Confirmation Order. Such notice is adequate under the particular circumstances and no other or further notice of the Court's entry of this Confirmation Order is necessary.

44. **Notice of Effective Date**. Within five business days after the occurrence of the Effective Date, counsel for the Debtors shall file with this Court a Notice of Effective Date and shall serve a copy of same on all parties that have filed notices of appearance in these Cases and all creditors and parties in interest that received service of the Solicitation Package. In addition, in accordance with Bankruptcy Rules 2002 and 3020(c), within five business days after entry of the Confirmation Order, the Post-Confirmation Debtors (or their agents) shall give notice of the entry of this Confirmation Order, and the Deadline for Filing Administrative Claims set forth in Paragraph 12 of this Confirmation Order, by United States first class mail postage prepaid, by hand, or by overnight courier service, to all parties served with the Confirmation Notice and any other parties identified by the Debtors. Mailing of the Confirmation Notice in the time and manner set forth in the preceding Paragraph are good and sufficient under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c), which Notice of Effective Date shall be served by the Post-Confirmation Debtors on the Local Rule 1007-2 Parties in Interest List.

45. **Retention of Jurisdiction**. Notwithstanding the Effective Date, the Court retains jurisdiction to:

     i.     allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Equity Interests;

     ii.     grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan;

     iii.     resolve any matters related to the assumption or rejection of any Executory Contract to which either of the Debtors is party or with respect to which either of the Debtors may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom;

     iv.     ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

     v.     decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtors that may be pending on the Effective Date or instituted by Goldman or the Post-Confirmation Debtors after the Effective Date; provided, however, that Goldman and the Post-Confirmation Debtors will reserve the right to commence actions in all appropriate jurisdictions;

     vi.     enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan, and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the

Reorganization Transaction, the Plan, the Confirmation Order or the Disclosure Statement;

        vii.    resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of the Reorganization Transaction, the Plan, the Confirmation Order, or any Person's or entity's obligations incurred in connection with the Plan;

        viii.    issue injunctions, enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or entity with Consummation or enforcement of the Plan, except as otherwise provided in the Plan;

        ix.    enforce Article X of the Plan;

        x.    resolve any cases, controversies, suits or disputes with respect to the releases, injunction and other provisions contained in Article X, and enter such orders as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

        xi.    enter and implement such orders as necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

        xii.    resolve any other matters that may arise in connection with or relate to the Reorganization Transaction, the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document adopted in connection with the Plan or the Disclosure Statement; and

        xiii.    enter an order and/or final decree closing the Chapter 11 Cases.

Reorganization Transaction, the Plan, the Confirmation Order or the Disclosure Statement;

viii.    resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of the Reorganization Transaction, the Plan, the Confirmation Order, or any Person's or entity's obligations incurred in connection with the Plan;

viii.    issue injunctions, enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or entity with Consummation or enforcement of the Plan, except as otherwise provided in the Plan;

ix.    enforce Article X of the Plan;

x.    resolve any cases, controversies, suits or disputes with respect to the releases, injunction and other provisions contained in Article X, and enter such orders as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

xi.    enter and implement such orders as necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

xii.    resolve any other matters that may arise in connection with or relate to the Reorganization Transaction, the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document adopted in connection with the Plan or the Disclosure Statement; and

38

xiii.   enter an order and/or final decree closing the Chapter 11 Cases.

DONE and ORDERED in Chambers at Jacksonville, Florida on *October 18 2011*

_____
Paul M. Glenn
United States Bankruptcy Judge

Copies furnished to:
Cynthia C. Jackson who shall serve a copy of this Confirmation Order as directed herein and file a certificate of service.

00773160.3

39

EXHIBIT "A"

LEGAL DESCRIPTIONS

Legal Description of Resort Land

HOTEL PARCEL

A part of the Christina Hill or Fitch Grant, Section 50 and a part of the Christina Hill or Fitch Grant, Section 51, all in Township 3 South, Range 29 East, St. Johns County, Florida, more particularly described as follows: For a point of reference commence at the Southeast corner of Tract "B", as shown on the plat of Water Oak, as recorded in Map Book 14, Pages 51, 52, 53 and 54 of the Public Records of said St. Johns County; thence North 61°16'10" East, along the Northerly right-of-way line of the 160 foot right-of-way of T.P.C. Boulevard as platted as Parcel "A", by said plat of Water Oak, a distance of 25.99 feet to reference point "A", as shown on said plat; thence South 28°43'50" East, across said right-of-way, a distance of 160.00 feet to the point of curve of a curve concave Southerly having a radius of 750.00 feet; thence Easterly, along the arc of said curve and along the Southerly right-of-way line of T.P.C. Boulevard, a chord bearing of North 85°39'03" East and a chord distance of 619.21 feet to the point of beginning; thence continue along the arc of said curve and along said Southerly right-of-way line of T.P.C. Boulevard, a chord bearing of South 52°49'03" East and a chord distance of 442.33 feet to the point of tangency of said curve; thence South 35°40'00" East, along the Southwesterly right-of-way line of said T.P.C. Boulevard, a distance of 544.23 feet; thence South 54°20'00" West a distance of 130.00 feet; thence South 28°02'02" West a distance of 276.85 feet; thence South 58°34'57" West a distance of 216.45 feet; thence South 27°26'23" West a distance of 145.15 feet; thence South 25°00'39" East a distance of 45.00 feet; thence South 68°10'56" East a distance of 278.89 feet; thence South 21°02'54" East a distance of 139.97 feet; thence South 72°45'16" West a distance of 412.11 feet; thence North 63°26'41" West a distance of 275.43 feet; thence South 75°03'58" West a distance of 114.77 feet to a point on the Easterly boundary of a parcel known as The T.P.A. Main Golf Course Parcel and described in Exhibit "B" of Official Records Volume 405, Page 291 of the aforementioned Public Records; thence North 62°00'20" West, along the boundary of said lands, a distance of 293.92 feet; thence North 17°16'38" East a distance of 624.82 feet; thence North 20°30'00" East a distance of 897.20 feet to the point of beginning.

TOGETHER WITH:

PARCEL 3: T.P.C. Boulevard-A-1-A to Guard Gate Easement Parcel a non-exclusive easement appurtenant to the Hotel Parcel for ingress and egress from the Hotel Parcel to State Road A-1-A, as created by access easement over T.P.C. Boulevard (Hotel) from Arvida Corporation, a Delaware Corporation, to Resort Holdings I, Ltd., a Georgia Limited Partnership, as recorded in Official Records Book 683, Page 178, Public Records of St. Johns County, Florida, and as amended by First Amendment to Access Easement between Arvida Corporation, a Delaware Corporation, as Grantor and Resort Holdings I, Ltd., a Georgia Limited Partnership, as Grantee, dated March 25, 1986 and recorded March 31, 1986 in Official Records Book 700, Page 607, and Amendment Agreement made on the 25th day of March 1986, by and among Arvida

Corporation, a Delaware Corporation, and Resort Holdings, I, Ltd., a Georgia Limited Partnership, Resort Holdings II, Ltd., a Georgia Limited Partnership, Arvida Hospitality Management, Inc., a Florida corporation, and filed on March 31, 1986 under Clerk's File Number 86-7413 and recorded in Official Records Book 700, Page 598, Public Records of St. Johns County, Florida, in and to the following described property lying and being in St. Johns County, Florida, to-wit:

A portion of T.P.C. Boulevard platted as Parcel "A" according to the plat of Water Oak, recorded in Map Book 14, Pages 51 through 54, of the Public Records of St. Johns County, Florida, running from the intersection of T.P.C. Boulevard with State Road A-1-A to and including its intersection with a Northerly projection of the Westerly boundary line of the lands described as The Hotel Parcel.

TOGETHER WITH:

PARCEL 4:  Signage Easement Parcel
A non-exclusive easement appurtenant to The Hotel Parcel for sign purposes as created by agreement between Arvida Corporation, a Delaware corporation, as Grantor and Resort Holdings I, Ltd., a Georgia Limited Partnership, dated September 3, 1985 and filed September 4, 1985 under Clerk's Number 85-19204 and recorded in Official Records Book 683, Page 190, and by First Amendment to Sign Easement dated March 25, 1986 and filed March 31, 1986 under Clerk's Number 86-7415 and recorded in Official Records Book 700, Page 609 and by Amendment Agreement made on the 25th of March, 1986 by and among Arvida Corporation, a Delaware Corporation, Resort Holdings I, Ltd., a Georgia Limited Partnership, Resort Holdings II, Ltd., a Georgia Limited Partnership and Arvida Hospitality Management, Inc., a Florida Corporation, and filed on March 31, 1986 under Clerk's File Number 86-7413 and recorded in Official Records Book 700, Page 598, granting said easement in and to the following described land lying and being in St. Johns County, Florida, to-wit:

A part of T.P.C. Boulevard as platted as Parcel "A" by the plat of Water Oak as recorded in Map Book 14, Pages 51, 52, 53, and 54, of the Public Records of St. Johns County, Florida, more particularly described as follows:  for a point of reference, commence at the intersection of the Southerly right-of-way line of said T.P.C. Boulevard with the Westerly right-of-way line of State Road A-1-A (as now established as a 200 foot right-of-way); thence North 00°40'10" East, along said Westerly right-of-way line a distance of 115.34 feet; thence North 89°19'50" West, a distance of 100.00 feet to the point of beginning, said point of beginning lying on a curve concave Northerly having a radius of 590.00 feet; thence from said point of beginning South 81°03'54" West, along the arc of said curve, a chord distance of 110.51 feet; thence North 06°38'23" East, a distance of 95.32 feet to a point on a curve concave Southwesterly having a radius of 400.00 feet; thence South 58°16'33" East, along the arc of said curve, a chord distance of 115.62 feet; thence South 00°40'10" West, a distance of 16.72 feet to the point of beginning.

TOGETHER WITH:

PARCEL 8:  Drainage Easement Parcel
A non-exclusive easement for drainage for the Hotel Parcel and Parcel 6 to utilize the drainage

system, "Perimeter Canal", as created by grant of easement from Fletcher Land Corporation to Tournament Players Association, Inc., its successors and assigns, dated February 1, 1979 and filed March 6, 1979 under Clerk's File Number 79-2946 and recorded in Official Records Book 405, page 276, Public Records of St. Johns County, Florida.

TOGETHER WITH:

PARCEL F:
The right of use of a parcel of land as set forth in Article 6.1 of that certain TPC Courses Agreement, dated August 14, 1989, as amended by that certain First Amendment to TPC Courses Agreement, dated December 8, 2000, a memorandum of which is dated December 8, 2000 and recorded December 12, 2000 in Official Records Book 1550, page 445, of the Public Records of St. Johns County, Florida.

TOGETHER WITH:

PARCEL A (CABANA CLUB):
A part of Government Lots 6 and 11, Section 27; together with a part of The Philip Solana Grant, Section 43, Township 3 South, Range 29 East, St. Johns County, Florida, being more particularly described as follows:

For a point of reference commence at the intersection of the North line of said Section 43 with the East right-of-way line of Ponte Vedra Boulevard (County Road No. 203), a 66 foot right-of-way line as now established; thence South 13°32'31"East, along said East right-of-way line, a distance of 300.00 feet to the point of beginning; thence continue South 13°32'31"East, along said East right-of-way line, a distance of 300.00 feet; thence North 76°27'29"East, a distance of 290 feet, more or less, to the mean high water line of the Atlantic Ocean, crossing the Coastal Construction Control Line as recorded in CCCL Book 13B, pages 1 through 15, and in Official Records Book 771, page 1621, all of the Public Records of St. Johns County at a distance of 34.84 feet; thence Northerly 300 feet, more or less, along the mean high water line of the Atlantic Ocean to a point which bears North 76°27'29"East from the point of beginning; thence South 76°27'29"West, a distance of 290 feet, more or less to the point of beginning, said point being South 76°27'29"West, at a distance of 30.39 feet from an intersection with the aforesaid Coastal Construction Control Line.

PARCEL B: (CABANA CLUB PARKING PARCEL):
A part of the Philip Solana Grant, Section 43, Township 3 South, Range 29 East, St. Johns County, Florida, being more particularly described as follows: For a point of reference commence at the intersection of the North line of said Section 43 with the West right-of-way line of Ponte Vedra Boulevard (County Road No. 203), a 66 foot right-of-way as now established; thence South 13°32'31"East, along the West right-of-way line of said Ponte Vedra Boulevard, a distance of 194.12 feet to the point of beginning; thence continue South 13°32'31"East, along said West right-of-way line, a distance of 415.32 feet; thence South 76°27'29"West, a distance of 208.00 feet; thence North 13°32'31"West, a distance of 53.00 feet; thence North 76°27'29"East, a distance of 14.00 feet; thence North 13°32'31"West, a distance of 179.62 feet; thence North 44°12'47"East, a distance of 21.91 feet; thence North 45°47'13"West, a distance of

12.00 feet; thence North 44°12'47"East, a distance of 64.00 feet; thence South 45°47'13"East, a distance of 16.50 feet; thence North 45°12'15"East, a distance of 50.15 feet; thence North 06°10'06"East, a distance of 121.78 feet; thence North 76°27'29"East, a distance of 35.00 feet to the point of beginning.

TOGETHER WITH:

PARCEL C:
Easement for Construction, Use and Operation of Parking Garage and Non- Exclusive Landscape Easement as set forth in Grant of Easement recorded in Official Records Book 870, page 1132, Public Records of St. Johns County, Florida.

TOGETHER WITH:

PARCEL D:
Non-Exclusive Easement for Vehicular and Pedestrian Ingress and Egress as set forth in that certain Reciprocal Easement Agreement recorded in Official Records Book 795, page 172, Public Records of St. Johns County, Florida.

TOGETHER WITH:

PARCEL E:
Non-Exclusive Dune Access and Drainage Easements as reserved in Deed recorded in Official Records Book 600, page 432, Public Records of St. Johns County, Florida.


Legal Description of Development Land

RESIDENTIAL PARCEL

A part of the Christina Hill or Fitch Grant, Section 51 and a part of the Hill or Fitch or Sanchez Grant, Section 52, all in Township 3 South, Range 29 East, St. Johns County, Florida, more particularly described as follows: For a point of reference commence at the Southeast corner of Tract "B", as shown on the plat of Water Oak, as recorded in Map Book 14, pages 51, 52, 53 and 54 of the Public Records of said St. Johns County; thence North 61°16'10"East, along the Northerly right-of-way line of the 160 foot right of way of T.P.C. Boulevard, Platted as Parcel "A", by said plat of Water Oak, a distance of 25.99 feet to reference Point "A", as shown on said Plat; thence South 28°43'50"East across said right-of-way a distance of 160.00 feet to the point of curve of a curve concave Southerly having a radius of 750.00 feet; thence Easterly along the arc of said curve and along the Southerly right-of-way line of T.P.C. Boulevard, a chord bearing of South 77°11'55"East and a chord distance of 994.56 feet to the point of tangency of said curve; thence South 35°40'00"East, along the Southwesterly right-of-way line of said T.P.C. Boulevard, a distance of 544.23 feet to the point of beginning; thence South 35°40'00"East, continuing with the Southerly right-of-way line, a distance of 233.00 feet to the point of curve of a curve concave Northeasterly having a radius of 700.36 feet; thence Southeasterly along the arc of said curve, an arc distance of 516.93 feet, being subtended by a chord bearing of South

56°48'42" East and a chord distance of 505.28 feet; thence leaving said right-of-way line, South 06°38'23"West a distance of 1215.70 feet to the Northeast corner of the 20 acre exception to Parcel 2, described in Official Records Volume 502, page 765, of the aforementioned Public Records; thence South 85°39'43"West, along the North line of said lands, and its Westerly projection, a distance of 1369.52 feet to a point on the Easterly boundary of a parcel known as the T.P.A. Main Golf Course Parcel and described in Exhibit "B" of Official Records Volume 405, page 291 of the aforementioned public records; thence Northeasterly and Northwesterly along the boundary of said lands, the following three courses: North 20°15'30"East a distance of 90.54 feet; North 38°31'20"East a distance of 287.23 feet; North 16°01'00"West a distance of 626.17 feet; thence North 75°03'58"East a distance of 114.77 feet; thence South 63°26'41"East a distance of 275.42 feet; thence North 72°45'16"East a distance of 412.11 feet; thence North 21°02'54"West a distance of 139.97 feet; thence North 68°10'56"West a distance of 278.89 feet; thence North 68°10'56"West a distance of 278.89 feet; thence North 25°00'39"West a distance of 45.00 feet; thence North 27°26'23"East a distance of 145.15 feet; thence North 58°34'57"East a distance of 216.45 feet; thence North 28°02'02"East a distance of 276.85 feet; thence North 54°20'00"East a distance of 130.00 feet to the point of beginning.

TOGETHER WITH:

PARCEL 6: T.P.C. BOULEVARD--A-1-A TO HOTEL EASEMENT PARCEL:
A Non-Exclusive Easement appurtenant to the residential parcel for Ingress and Egress as created by Access Easement over T.P.C. Boulevard between Arvida Corporation and Resort Holdings II, Ltd., a Georgia limited partnership, dated September 3, 1985 and recorded September 4, 1985 in Official Records Book 683, page 292 and as amended by First Amendment to Access Easement over T.P.C. Boulevard, dated June 19, 1986 and recorded June 26, 1986 under Clerk's File Number 86-15966, in Official Records Book 708, page 2016, over and upon a portion of T.P.C. Boulevard platted as Parcel "A" according to the plat of Water Oak, recorded in Map Book 14, pages 51 through 54, of the Public Records of St. Johns County, Florida, running from and including the intersection of T.P.C. Boulevard with State Road A-1-A to and including its intersection with a Northeasterly projection of a line beginning at the Northernmost point of the "Property", defined in the Access Easement, and bearing North 54°20'00"East.

TOGETHER WITH:

PARCEL 8: DRAINAGE EASEMENT PARCEL:
A Non-Exclusive Easement for drainage for the residential parcel and Parcel 6 to utilize the drainage system, "Perimeter Canal", as created by Grant of Easement from Fletcher Land Corporation to Tournament Players Association, Inc., its successors and assigns, dated February 1, 1979 and filed March 6, 1979 under Clerk's File Number 79-2946 and recorded in Official Records Book 405, page 276, Public Records of St. Johns County, Florida.

TOGETHER WITH:

PARCEL F:
The right of use of a parcel of land as set forth in Article 6.1 of that certain TPC Courses

Agreement, dated August 14, 1989, as amended by that certain First Amendment to TPC Courses Agreement, dated December 8, 2000, a memorandum of which is dated December 8, 2000 and recorded December 12, 2000 in Official Records Book 1550, page 445, of the Public Records of St. Johns County, Florida.

## Legal Description of Condominium Units

Units 127, 438, 533, 1018, 1038, and 1227, GRAND CAY VILLAS AT PONTE VEDRA, a Condominium according to the Declaration of Condominium recorded at Official Records Book 1562, page 494, of the Public Records of St. Johns County, Florida, and all amendments and exhibits thereof.